735 So.2d 844 (1999)
STATE of Louisiana
v.
Tranace BATTIE.
No. 98-KA-1296.
Court of Appeal of Louisiana, Fifth Circuit.
May 19, 1999.
*847 Ferdinand J. Kleppner, Metairie, LA, Attorney for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry Boudreaux, Quentin P. Kelly, George C. Wallace, Jr., Assistant District Attorneys, Gretna, LA, Attorneys for Plaintiff/Appellee.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and MARION F. EDWARDS.
DALEY, Judge.
Defendant, Tranace Battie, appeals her conviction of simple burglary of a vehicle, a violation of LSA-R.S. 14:62. Defendant was found guilty following a jury trial. On appeal, she argues eleven assignments of error in the trial court proceedings. Upon review, this court finds none to be with merit, and affirms defendant's conviction.
Defendant argues the following assignments of error:
1. The Court erred in failing to grant defendant's Motion to Suppress her statement.
2. During the course of the trial, the Court erred in permitting the Assistant District Attorney to refer to other alleged crimes, despite the fact that no "Prieur" hearing had been conducted and in allowing in evidence the taped statement of the defendant which included references by the interrogator to "other crimes."
3. The Court erred in permitting a prosecution complaining witness, Margaret Schmidt, to view a photo line up, despite the fact that defendant's photograph was not in that line up and which had not previously been disclosed to defense counsel.
4. The Court erred in permitting a prosecution witnesses (sic) to testify *848 concerning alleged cashed checks.
5. The Court erred in permitting the introduction into evidence of a photo line-up.
6. The Court erred in admitting into evidence the taped statement of defendant.
7. The Court erred in including an instruction to the jury which advises the jury that it would be permitted to impeach the defendant's sworn testimony on the basis of prior convictions, even though the defendant admitted those convictions.
8. The Court erred in refusing to permit defense counsel to argue to the jury the absence of the co-defendant.
9. The Court erred in refusing to grant defendant's Motion for a New Trial.
10. The Court erred in failing to grant defendant's Motion for a Post Verdict Judgment of Acquittal.
11. The Court erred in sentencing defendant to a period of six year(s) at hard labor, without an adequate investigation of her background and without enunciating or clarifying the consideration of all sentencing factors and guidelines and in refusing to grant defendant's Motion to Reconsider Sentence.

FACTS
Tranace Battie was charged with simple burglary of a vehicle. On June 14, 1997, the victim, 75 year old Margaret Schmidt, testified that she was driving on her street in Metairie. As she turned into her driveway, her vehicle was rearended by the vehicle driven by Gidget White, Battie's co-defendant, and occupied by Battie. Schmidt got out of her car, as did White and Batte. They asked Schmidt if she was hurt. Schmidt testified that the passenger, later determined to be Battie, kept telling her to look under her car to see if everything was all right. Mrs. Schmidt looked, and determined that her car's underside was fine. Schmidt asked for driver's license and insurance information. She testified that the passenger (Battie) looked in the glove compartment, but took so long that Mrs. Schmidt walked over to their car and saw her own purse in the back seat. When Mrs. Schmidt said, "What is my purse doing there?", the two women drove off, taking Mrs. Schmidt's purse.
Mrs. Schmidt testified that the incident happened around 5:00 p.m. in the afternoon. She also said that one of the perpetrators (the passenger, defendant Battie) gave her a false name and phone number. It was also the passenger who was insistent that Schmidt look under her car, she said. She watched the car speed off towards I-10 and get on the service road. Mrs. Schmidt said she did not observe the women fighting in the car as they drove off. After the car drove off, Mrs. Schmidt testified that she never saw her purse or belongings again. Later, she was able to identify the driver, Gidget White, in a photo lineup provided by Det. Lataxes of the Jefferson Parish Sheriff's Office.
Mrs. Schmidt testified that she lost cash, cosmetics, checks, and credit cards. She stated that, following the theft, unauthorized charges of over $500.00 were made on her K & B credit card, most within several days following the incident. She also testified that checks were cashed on her checking account that she did not write.
On cross examination, Mrs. Schmidt testified that the passenger stood with her near the rear of her car, while the driver paced back and forth. Mrs. Schmidt said that the passenger went to their car to search for the insurance information. The passenger told her that they did not have driver's license or insurance information, but gave her the name of an agent. When the driver went to get back in the car, *849 Mrs. Schmidt noticed her purse on the floor behind the front seat.
Lashonda Sterges testified that she was working as a cashier at Schwegmann's grocery store on Airline in June and July of 1997. She stated that she had known Gidget White and Tranace Battie for many years. Sterges was fired from Schwegmann's for cashing stolen checks, for which she was prosecuted and was on probation. She testified that in June or July of 1997, White and Battie purchased groceries from her at Schwegmann's using a check that did not belong to either of them. Sterges did not remember whose name was on the check. She testified that Battie filled it out. On cross, she stated that White also cashed some of the checks. She also admitted that she did not know if the checks were stolen, but she knew they did not have White's or Battie's name on them.
Detective Keith Lataxes testified that he investigated the burglary of Mrs. Schmidt's car. His investigation developed the names of Gidget Bazile White and Tranace Battie as suspects. He presented a photo lineup, containing White's picture, to Mrs. Schmidt, who identified White as the driver.
Detective Lataxes left a message at Battie's home, upon which she came to the detective bureau to answer questions. Detective Lataxes testified that he advised her of her constitutional rights and that she was a suspect in a burglary. He stated that she indicated she understood her rights and waived them to answer his questions. Detective Lataxes took a voluntary taped statement from Battie. The detective identified both the tape itself and the transcript. The tape was played for the jury. Defendant's statement admits her presence in White's car that afternoon, and that an accident happened with Mrs. Schmidt, but denies that Battie had any knowledge that White planned to steal Mrs. Schmidt's purse.
On cross examination, Detective Lataxes confirmed that he spoke with Battie one more time, but did not tape that interview as she did not provide any new information. He acknowledged that Mrs. Schmidt's identification of White as the driver was tentative. On re-direct, the detective stated that Battie admitted White was the driver and admitted being in the car that day.
Tranace Battie testified in her own defense. She stated that White was her distant cousin. She testified that Detective Lataxes left her a message about coming in for a traffic ticket, which she did not believe because she did not have a driver's license. Battie went to the detective bureau and was interviewed by Lataxes. She testified that he threatened her with prison if she did not help him.
Battie said that on June 14, 1997, White was taking her to get some medication that Battie needed to take everyday. Battie did not have transportation of her own. In the car, instead of going directly to the pharmacy, White told Battie she had to check on something, and they ended up in a subdivision off of Veterans Highway. Battie stated that White hit another car from behind. Battie jumped out to see if the lady was all right. Battie said she was concerned about the other lady because she could see she was elderly. When the lady asked her for the insurance information, defendant went to the glove box to look for it. Battie testified that she did not know where White was at this time, but she was not in the car.
Battie said that she did not know whose car they were in, so she just gave the lady (Schmidt) a name off an envelope in the glove box for insurance, but then she testified that she gave Schmidt the name of the owner of the car and a number off the top of her head that the owner had given her once. Next, she said White got in the car, slammed the glove box and punched her in the arm. At that moment Schmidt asked if that was her purse in the car. Then, Battie testified, White pulled off, laughing, but the two started fussing and fighting *850 over the incident. In the middle of fighting, she said White drove into a stop sign pole. She stated that they went to a K & B, where White purchased a phone with a credit card, but Battie could not see whose name was on it. White dropped her off, and she had not seen her since.
Battie denied cashing a check in Schwegmann's with Lashonda Sterges. She explained Sterges had a vendetta against her as the result of a family feud caused by Sterges dating Battie's sister's boyfriend. The defendant admitted to a prior conviction for shoplifting. Battie testified that she had no knowledge that White planned the incident. She claimed the first she knew of it was when they drove off and she saw the lady's purse in the back. She denied going into Mrs. Schmidt's car, and she said she never saw White go in the car. Battie did not tell police about the theft because White was her friend and distant relative.
On cross, Battie admitted to two felony convictions for shoplifting. She denied telling Mrs. Schmidt to look under her car, saying that Schmidt was maybe confused. She also explained Mrs. Schmidt's testimony, that she did not see the two women fighting as they drove off, on the fact that the sports car they were in was low to the ground and maybe the lady couldn't see inside very well.
Battie testified that the two rode around arguing about bringing the purse back. She also said that when she went in the K & B, White's transaction was already completed, which differed from her earlier testimony that she saw White pay with a credit card. Battie said that while she knew White had stolen the purse, and suspected that she had used the credit card, she did not report it to the police because she herself had not stolen the purse and she wasn't worried about it at the time. The defense rested.
After deliberating, the six person jury found defendant guilty as charged. Prior to sentencing, the defense filed a Motion for New Trial and a Motion for Post Verdict Judgment of Acquittal, which the trial court denied. The defense objected to the trial court's failure to request a presentence investigation report. The defendant was sentenced to six years at hard labor. Defendant orally moved to reconsider the sentence. At the same hearing, the state filed a multiple offender Bill of Information, alleging that the defendant was a second felony offender.
At the hearing on the multiple bill, defense counsel offered no defense to the bill. Defendant's original sentence was vacated and she was sentenced to six years at hard labor on the multiple offender bill. Defense counsel offered a Motion to Reconsider Sentence, which was denied.

ASSIGNMENTS OF ERROR NUMBER ONE AND SIX
By these assignments, the defendant argues that her statement to Detective Lataxes should have been suppressed, because she did not make the statement freely and voluntarily. The defendant claims that Detective Lataxes threatened her prior to giving her statement. To buttress her allegation that Detective Lataxes consistently used coercive tactics, the defendant discusses a second statement taken in which Detective Lataxes allegedly failed to allow the defendant to call an attorney before the statement was taken. The state responds that the trial court, based upon the evidence and the court's determinations of witness credibility, correctly concluded that the defendant freely and voluntarily gave Detective Lataxes the taped statement introduced at trial.
Before a statement may be introduced into evidence, the state must prove beyond a reasonable doubt that the statement was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.[1] The trial judge's conclusion on *851 the credibility and weight of testimony relating to the voluntariness of a statement for the purpose of admissibility will not be overturned on appeal unless it is not supported by the evidence.[2]
Detective Lataxes testified at the suppression hearing that prior to taking the defendant's statement on September 2, 1997, he advised the defendant of her constitutional rights. Detective Lataxes told the court that he did not force, coerce or intimidate the defendant into giving her statement and did not tell her he could "help her" if she gave her statement. Detective Lataxes re-affirmed this testimony at trial. Further, the defendant was recorded saying that she was giving the statement of her own free will and was not promised anything or threatened by Detective Lataxes.
The defendant, however, testified at the suppression hearing and at trial that she was threatened by Detective Lataxes. The trial court reviewed in camera Detective Lataxes's notes he recorded prior to taping Battie's statement, and found they corroborated Detective Lataxes's testimony. The trial court apparently found Detective Lataxes's testimony to be more credible than the defendant's. This assignment of error has no merit.
The defendant also argues that Detective Lataxes took a second statement from her, while she was incarcerated, and refused to let her speak to an attorney. However, as the state correctly notes, the second statement was not admitted into evidence, so the argument is moot. The defendant finally argues that the state failed to establish a proper chain of custody of the tape of the defendant's statement. A continuous chain of custody is not essential to enable the state to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized. Once a proper foundation has been laid with regard to a piece of evidence, a lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to admissibility.[3]
In the instant case, defendant did not show a defect in the chain of custody. Detective Lataxes testified that he recorded the statement and filed the cassette as evidence with the police department's Property and Evidence Division. When he picked up the tape, it was sealed with tape as he had left it, and was marked with his initials. The detective reviewed the tape again, and testified that it had not been tampered with. These assignments of error have no merit.

ASSIGNMENT OF ERROR NUMBER TWO AND FOUR
During trial, Ms. Lashonda Sterges testified that in June and July of 1997 the defendant and Gidget White came in to the Schwegmann's store where she worked and bought groceries with a stolen check. Ms. Sterges testified that the defendant filled out a check with someone else's name on it. The defendant argues that this testimony constituted inadmissable other crimes evidence. The state responds that this testimony constituted "res gestae" and was therefore admissible at trial. The state argues in the alternative, that even if the admission of the evidence was erroneous, it was harmless error.
Generally, evidence of other acts of misconduct is inadmissible. LSA-C.E. art. 404(B)(1); State v. Prieur, 277 So.2d 126 (La.1973). However, when evidence of other crimes or bad acts tends to prove a material issue and has independent relevance other than to show that the defendant *852 is of bad character, it may be admitted.[4] Formerly known as "res gestae," evidence that constitutes an integral part of the crime is admissible without prior notice to the defense.[5]
Sterges's testimony cannot be considered res gestae evidence because the state produced no proof that the check she saw Battie and White cash belonged to the victim, Mrs. Schmidt. Further, though Mrs. Schmidt testified that her stolen purse contained checks that were cashed by someone other than her, she did not testify that any of her checks were cashed at Schwegmann's. Additionally, the time frame that Battie and White cashed the check was loosely established as around June or July of 1997. The theft occurred on June 14, 1997. Without evidence that the check Battie and White cashed at Schwegmann's belonged to Mrs. Schmidt, we cannot say that Sterges's evidence constituted an integral part of the crime (res gestae evidence).
LSA-C.E. art. 404(B)(1) states:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Clearly, the prosecution sought to introduce Sterges's testimony to show defendant's motive, opportunity, intent, plan, knowledge, and absence of mistake or accident, in that the defendant's claim that she was not aware that White was going to steal Schmidt's purse is refuted by evidence that defendant participated in using the stolen checks. As such, the state was required to furnish the defense with notice of its intent to introduce this evidence.
Pursuant to LSA-C.Cr.P. art. 770, the remedy for admission of other crimes evidence is mistrial. Defense counsel did not ask for a mistrial, but entered a continuing objection to the state's use of Sterges's testimony without proper Prieur notice. On appeal, an improper reference to other crimes evidence is subject to the harmless error rule.[6] The test for determining harmless error is whether the verdict actually rendered in that case was surely unattributable to the error.[7] In the instant case, the jury heard the testimony of the victim and defendant. They heard the defendant's version of events. The guilty verdict does not appear to be attributable to Sterges's testimony, but is amply supported by the other testimony and evidence.
The defendant further complains about other crimes evidence contained within her taped statement that was admitted at trial. However, a review of the statement reveals that there is no other crimes evidence as to defendant revealed in the statement. Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE AND FIVE
The defendant argues that the trial court erred in admitting into evidence a photographic line-up, and by allowing a witness to view the same. The state responds *853 that the evidence was relevant, and argues in the alternative that even if its admission was erroneous, it was harmless error.
A defendant who seeks to suppress the admission of a photographic lineup must prove that the identification made from the line-up itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Lowenfield[8]; State v. Meyers.[9] The photographic lineup about which the defendant complains did not contain a photo of the defendant. Accordingly, there was no likelihood of misidentification of the defendant. However, the defendant argues that because the line-up contained a photograph of the co-defendant, Gidget White, it presented a "guilt by association inference." The defendant, however, presents no legal authority for this concept. Further, the only thing that the identification could have shown is that Gidget White was the driver of the car in which the defendant was the passenger, a fact already admitted by the defendant. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
The defendant argues that the trial court erred by allowing a jury instruction related to prior convictions of a witness, because such an instruction undercut her defense at trial. The state responds that the instruction enunciated a credibility determination to be made by the jury and was not erroneous.
The defendant complains of the following instruction:
The testimony of a witness may be discredited by showing that the witness previously was convicted of a crime. The conviction does not necessarily mean that the witness is failing to tell the truth. It is a circumstance you may consider, along with all other evidence, in deciding whether you believe any or all of his (her) testimony.
The jury was instructed further that "the conviction does not necessarily mean that the witness is failing to tell the truth":
As jurors you alone determine the weight and credibility of the evidence. As the sole judges of the credibility of witnesses and of the weight their testimony deserves, you should scrutinize carefully the testimony and the circumstances under which the witness has testified.
* * * * * *
[I]f the defendant does testify, you should judge his testimony in the same manner as you judge the testimony of any other witness.
The defendant argues that the complained of instruction "emasculated the defendant's entire testimony and her defense" by informing the jury that the defendant's prior conviction was sufficient to impeach her testimony. LSA-C.E. art. 609.1 allows that "in a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below." If a defendant chooses to testify, this provision authorizes credibility testing with evidence of prior criminal convictions. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 99.
When considering an allegedly improper jury instruction, a reviewing court must determine whether it is "reasonably likely" that the jury applied the challenged instruction in an unconstitutional manner, not whether it is possible that the jury misapplied the instruction.[10] In *854 determining whether it is reasonably likely that the jurors misapplied the instruction, the challenged terms are considered in relation to the instructions as a whole.[11] The test is whether, taking the instruction as a whole, reasonable persons of ordinary intelligence would understand the charge. State v. West, 568 So.2d 1019 (La.1990).
The complained of instruction that "[t]he testimony of a witness may be discredited by showing that the witness was previously convicted of a crime" is a true statement of the law. Further, the jury instructions, considered as a whole, do not "emasculate" the defense. The instructions clearly tell the jury that the defendant's prior convictions are only one factor to be used in assessing the defendant's credibility, not the sole factor. The instructions also clearly inform the jury that they alone are responsible for assessing the credibility of the defendant. Accordingly, the instructions, when read as a whole, are true statements of the law that could be understood by persons of reasonable intelligence. There is no evidence that the instruction was applied in an unconstitutional manner.

ASSIGNMENT OF ERROR NUMBER EIGHT
Defendant argues that the Court erred in refusing to permit defense counsel to argue to the jury the absence of the co-defendant. During closing arguments, the defendant alluded to the absence of the co-defendant, Gidget White, stating: "And, along those lines, ladies and gentlemen, you know who else isn't in this Court today. Gidget White. Where is Gidget?" The state objected to this reference. The trial court sustained the objection. Defense counsel did not ask that his objection be noted for the record. Because the objection was not noted for the record, it was not preserved for appellate review.
The defendant argues that defense counsel's reference to Gidget White was merely an attempt to argue to the jury a lack of evidence. The state argues that defense counsel's remark was an improper inference to the state's failure to call a witness. The state further argues that White was unavailable as a witness because she was a co-defendant who would have asserted her Fifth Amendment privilege against self incrimination.
According to LSA-C.Cr.P. art. 774, the closing argument must be confined to the evidence or lack thereof, the conclusions which may be inferred, and the applicable law. Both sides may draw their own conclusions from the evidence and may impress upon the jury any view arising out of the evidence.[12]
White was not called as a witness, and there is no certainty that she would have exercised her privilege if called as a witness. Therefore, the State's argument that the defense's reference to White was improper on the basis of the Fifth Amendment privilege is without merit. We do not find defense counsel's remarks to have been improper. But we also find that the trial court's sustaining the prosecutor's objection to have been without prejudicial effect to the defendant. Defense counsel was able to make his point regarding Gidget White. And, as the defendant admitted to being in the car with the co-defendant, and placed the blame on the co-defendant, it is difficult to see how the jury's hearing or not hearing a question about the co-defendant's whereabouts could have contributed to the verdict.

ASSIGNMENT OF ERROR NUMBER NINE
The defendant argues that the trial court erred by failing to grant her Motion for a New Trial. Her Motion for New Trial alleged that 1) the verdict in the case was contrary to the law and the evidence; *855 and 2) the court's ruling on written motions and oral rulings established prejudicial error.[13]
Pursuant to LSA-C.Cr.P. art. 851, the Motion for New Trial is based upon the supposition that injustice has been done to the defendant, and unless such injustice is shown, the new trial motion shall be denied no matter upon what allegations the motion is grounded. In a motion for new trial, the trial judge can only review the weight of the evidence and as such make a factual review as a "thirteenth juror," rather than under the sufficiency of evidence standard of Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).[14] The ruling on a motion for new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only when there is a clear showing of abuse of that discretion.[15]
After reviewing the evidence presented at trial, we find that the trial judge did not abuse his discretion sitting as the "thirteenth juror." The evidence and verdict do not show injustice to the defendant. The defendant further argues that the trial court's rulings on written motions and oral objections were erroneous, and thus warranted a motion for new trial. As discussed in the other assignments, the trial court's rulings are not erroneous.

ASSIGNMENT OF ERROR NUMBER TEN
The Court erred in failing to grant defendant's Motion for a Post Verdict Judgment of Acquittal.
A Motion for Post Verdict Judgment of Acquittal raises the question of sufficiency of evidence. LSA-C.Cr.P. art. 821; State v. Ellis, 672 So.2d at 1008. The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, supra, requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
On appeal, the defendant argues that the trial court failed in refusing to grant the motion, because the circumstantial evidence presented at trial did not exclude every reasonable hypothesis of innocence. However, the elements of the instant case were proven with direct evidence, testimony from the victim and the defendant. Accordingly, the state was not required to exclude every reasonable hypothesis of innocence. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER ELEVEN
The defendant argues that the trial court committed error in sentencing defendant to a period of six year(s) at hard labor, without an adequate investigation of her background and without enunciating or clarifying the consideration of all sentencing factors and guidelines.
The defendant contends the trial court erred by failing to state for the record the considerations taken into account and the factual basis for imposing sentence as required by LSA-C.Cr.P. art. 894.1(C) and argues that the matter ought to be remanded for re-sentencing. However, the defendant did not include the issue of failing to comply with LSC.Cr.P. art. 894.1(C) in either her Motion to Reconsider Sentence, nor did she argue *856 regarding that issue at the hearing on the Motions to Reconsider Sentence; thus, the defendant is precluded from raising the issue on appeal.[16] Further, the record reflects that the trial court was aware of the nature of the offense, the defendant's prior record, and the defendant's age, familial status, and medical conditions.
The defendant also argues in her assigned errors that the trial court erred by refusing to grant the defendant's Motion to Reconsider Sentence. However, the defendant fails to argue this issue on appeal. Assignments of error neither briefed nor argued are considered abandoned pursuant to URCA, Rule 2-12.4; State v. Bruce, 556 So.2d 129 (La.App. 5 Cir.1990), writ denied, 561 So.2d 114 (La. 1990).
The record further reveals that defendant's sentence was not excessive. The defendant received a 6 year sentence, the minimum sentence she could have received as a second felony offender. LSA-R.S. 14:62, 15:529.1(A)(2)(a). This court has held that mandatory minimum sentences are not constitutionally excessive. State v. Curtis, 97-769 (La.App. 5 Cir. 2/11/98), 707 So.2d 1328; State v. Richards, 97-1182 (La.App. 5 Cir. 4/15/98), 713 So.2d 514.

ERROR PATENT DISCUSSION
The record reflects that the trial court in this case did not inform defendant of the three year prescriptive period for Application for Post Conviction Relief as per LSA-C.Cr.P. art. 930.8. We order the trial court to send written notice of the prescriptive period to defendant within ten days of the rendering of this Court's opinion and file written proof in the record that defendant received such notice.[17]
Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] State v. Cousan, 94-2503 (La.11/25/96), 684 So.2d 382; LSA-R.S. 15:451; LSA-C.Cr.P. art. 703(D).
[2] State v. Chester, 97-2790 (La.12/1/98), 724 So.2d 1276.
[3] State v. Kelson, 94-263 (La.App. 5 Cir. 11/16/94), 646 So.2d 1049, writ denied, 688 So.2d 520.
[4] State v. Silguero, 608 So.2d 627 (La.1992); State v. Sterling, 95-673 (La.App. 5 Cir. 2/27/96), 670 So.2d 1316, 1321.
[5] State v. Brown, 95-124, p. 5 (La.App. 5 Cir. 5/30/95), 656 So.2d 1070, 1074-1075.
[6] State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101-102.
[7] Id.
[8] 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986), rehearing denied, 478 U.S. 1032, 107 S.Ct. 13, 92 L.Ed.2d 768 (1986).
[9] 95-750 (La.App. 5 Cir. 11/26/96), 683 So.2d 1378, writ denied, 693 So.2d 766 (La.1997).
[10] Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445.
[11] State v. Lassere, supra.
[12] State v. Langley, 95-1489 (La.4/14/98), 711 So.2d 651, 675, rehearing granted on other grounds.
[13] The defendant alleged a third ground for granting a new trial, arguing that the "ends of justice" would be served by granting the motion. However, a new trial motion made on this basis is not reviewable on appeal. State v. Johnson, 98-1314 (La.App. 4 Cir. 7/1/98), 719 So.2d 68, 75.
[14] State v. Caminita, 411 So.2d 13, 17 (La. 1982), cert. denied, 459 U.S. 976, 103 S.Ct. 314, 74 L.Ed.2d 291 (1982); State v. Ellis, 95-1005 (La.App. 5 Cir. 3/25/96), 672 So.2d 1007, 1008.
[15] State v. Battle, 93-900 (La.App. 5 Cir. 3/29/94), 635 So.2d 337, writ denied, 644 So.2d 649 (1994).
[16] LSA-C.Cr.P. art. 881.1(D). State v. Vaurigaud, 96-807 (La.App. 5 Cir. 2/12/97), 690 So.2d 110, 113, writ denied, 701 So.2d 165 (La.9/19/97).
[17] See State v. Kershaw, 94-141 (La.App. 5 Cir.9/14/94), 643 So.2d 1289.