841 So.2d 866 (2003)
STATE of Louisiana
v.
David MARSHALL.
No. 02-KA-747.
Court of Appeal of Louisiana, Fifth Circuit.
February 11, 2003.
Writ Denied June 6, 2003.
*867 Paul D. Connick, Jr., District Attorney, 24th Judicial District Attorney, Alan D. Alario, II, Terry M. Boudreaux, Assistant District Attorneys, Gretna, LA, for State.
Jane L. Beebe, Gretna, LA, for defendant-appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
At issue in this appeal is whether the trial court erred in allowing the state to introduce other crimes evidence and whether defendant's sentence is excessive. *868 For the following reasons, we affirm the conviction and remand for resentencing.

FACTS AND PROCEDURAL HISTORY
This case arises out of an incident that occurred in March 2001, when defendant, David Marshall, dragged his ex-girlfriend, Shedanna Smith, by the hair into his house, physically abused her, and locked her in a bedroom with burglar bars for several hours.
Officer Brian LaBruzza responded to a dispatch on March 2, 2001, at 1629 Garden Road. The call concerned a woman who had been beaten and locked in a bedroom against her will. He was advised that the perpetrator left the premises in a darkcolored Chevrolet vehicle. However, when he arrived, he saw that the vehicle was there and surmised that the perpetrator and the victim were still inside. At the same time, Officer LaBruzza remembered that he had previously been to this address to handle another domestic abuse incident.
When he approached the residence, he saw that the front door was open. After a brief struggle, Officer LaBruzza arrested the defendant and went back into the house to check on the victim, Shedanna Smith. He found her and some children extremely upset and together in the back bedroom. Officer LaBruzza observed and photographed Ms. Smith's injuries which included a swollen right eye and multiple bruising about her body, legs, and back. Ms. Smith was taken to East Jefferson General Hospital for medical attention. A relative came to the house and took the children away.
Officer LaBruzza described the scene as "chaotic" and "pretty violent." He observed that the windows of the bedroom in which Ms. Smith was held were secured by burglar bars, that the bedroom door could only be unlocked from the outside, that the front door was dead-bolted, and that Ms. Smith did not have a key. Additionally, there was no working telephone in the house.
On June 6, 2001, the Jefferson Parish District Attorney filed a bill of information charging defendant, David Marshall, with the second degree kidnapping of Shedanna Smith in violation of La R.S. 14:44.1.[1] Defendant was arraigned on June 7, 2001 and pled not guilty. On October 31, 2001, the state filed a notice of intent to use evidence of other crimes. In that notice, the state detailed a prior incident in which defendant physically attacked his daughter, Bianca Lewis, on October 13, 2000. The state also asserted that the purpose of using the other crime was to show defendants *869 knowledge, intent, guilty knowledge, system and motive. At the Prieur[2] hearing, the state produced Officer Brian LaBruzza as a witness. Following the Prieur hearing on January 7, 2002, the trial court ruled that the other crimes evidence was admissible.
Officer Brian LaBruzza testified at the hearing and at trial that, on October 13, 2000, he responded to a dispatch at 1423 31st Street involving a man, later identified as defendant, who had physically abused his daughter, Bianca Lewis. After Officer LaBruzza arrived at the scene and interviewed a female witness. He subsequently went to defendant's house, 1629 Garden Street, approximately one block away. When he arrived, he saw Miss Lewis hiding inside a van. Officer LaBruzza asked Miss Lewis to exit the van and he observed physical injuries including a contusion to her eye, bumps and bruises all over her body, and a welt on her legs and her back. Officer LaBruzza interviewed Miss Lewis and went inside the house to look for defendant. He found defendant, interviewed him then placed him under arrest.
Bianca Lewis, corroborated the October 13, 2000, incident as well as the events giving rise to appeal. Miss Lewis testified that around March 1, 2001, she saw her father pick up Ms. Smith, throw her down on the sofa, and hit her in the face and other places. Miss Lewis was scared, so she went back into the bedroom with the other children. Her father subsequently brought Ms. Smith into the bedroom. He told Ms. Smith to look at the children, and he continued hitting her. Miss Lewis' father subsequently started cutting off Ms. Smiths hair and fingernails, stating that he did not pay for them. She saw Ms. Smith fall to the floor complaining of chest pains. Miss Lewis was able to call Ms. Smith's mother to tell her what happened, before her father brought her home.
Before she left, Ms. Lewis observed defendant lock the doors with his keys. Ms. Smith had a set of keys to the house but not with her. Miss Lewis testified there were burglar bars on the windows, that there was no way out of the house except through the front and back doors and that her father had taken Ms. Smiths cell phone. When Miss Lewis left the house, Ms. Smith was still in the bedroom.
The victim, Shedanna Smith, testified at trial that she was 21 years old, and that defendant was her ex-boyfriend. She and defendant began dating in July of 1997, and a year later, they moved in together. Ms. Smith worked for McDonald's from 1999 to 2001. She testified that, at first, their relationship was fine, but later defendant began to complain about everything. Defendant did not approve of the way Ms. Smith dressed and at times, he would tell her what to wear. In the first year they were together, defendant worked a lot as a truck driver. However, defendant subsequently could not work due to his high blood pressure. Therefore, Ms. Smith was the sole source of income when she lived with defendant. Ms. Smith also testified about the other crimes incident occurring on October 13, 2000, involving Miss Lewis.
As to the criminal conduct at issue in this case, Ms. Smith stated that defendant pulled her hair from the back and dragged her inside the house. He threw her on the sofa and punched her in the face. He told one of his daughters to grab a stick. When he got the stick, defendant continually hit Ms. Smith on her leg and arm with it. Subsequently, defendant dragged Ms. Smith into the children's bedroom.
*870 The next morning, defendant woke up and got the children ready for school. He told Ms. Smith to write an essay on where she had been for the past two months. Defendant brought the children to school. Ms. Smith tried to get out of the house, but all the doors were locked and there were bars on every window. She had keys to the house, but not with her. There was no telephone, and defendant had taken away her cell phone. She was afraid to break a window for fear there would be negative repercussions. Nevertheless, had Ms. Smith somehow been able to climb out of a window despite the bars she felt she could not because her legs were in excruciating pain.
Michael Marshall testified on behalf of defendant, his younger brother. Mr. Marshall stated that his brother's house had burglar bars when defendant moved in. Thus, he did not think defendant put the bars on the windows. Mr. Marshall testified that the back door was "never really locked," and that if someone did lock it, the lock would "pop right open."
After a three day jury trial in January 2002, defendant was found guilty of second degree kidnapping. Defendants motion for new trial was denied on January 16, 2002. On January 22, 2002, the trial court sentenced defendant to imprisonment at hard labor for 20 years. Defendant filed this motion for appeal on January 28, 2002.

DISCUSSION
Defendant asserts that the trial court erred by granting the states 404(B) motion and allowing evidence of other criminal activity into evidence at trial because it was highly prejudicial to him and lacked sufficient probative value. Defendant further argued that the evidence served no purpose other than to depict him as a bad person. Defendant also contends that there were no material questions in this case regarding plan, knowledge, identity, intent, motive, mistake or accident.
He claims that the other crimes evidence could only have been offered by the state to show modus operandi, but that there was no real connection between the incident involving his daughter, Bianca Lewis, and the alleged second degree kidnapping of his girlfriend, Shedanna Smith. He explains that the two events were six months apart and were the result of two different provocations. Defendant argues that, in the incident involving Miss Lewis, he was merely disciplining an unruly child. In the incident involving Ms. Smith, he argues that it was a girlfriend/boyfriend argument, and that Ms. Smith voluntarily came to his house that day with her son and Miss Lewis. Citing the differences between the two incidents, defendant contends there was no reason to present the aggravated battery testimony and no probative value in that testimony.
The state responded that it offered evidence to prove motive. It claims that motive was at issue in this case, because defendant argued that the kidnapping was merely a girlfriend/boyfriend argument, and that the aggravated battery was merely the normal disciplining of a child. The state contended that defendant's motive in both crimes was discipline; when defendant felt he was "losing control" he would physically abuse females close to him in the name of discipline. The state alternatively argued that even if the evidence was improperly admitted, the error was harmless given that there was substantial eyewitness testimony to prove the second degree kidnapping charge.
Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. LSA-C.E. art. 404 B(1); State v. Prieur, 277 So.2d 126, 128 (La.1973); State v. McGinnis, 00219 *871 (La.App. 5 Cir.8/29/00), 768 So.2d 216, 218. However, when such evidence tends to prove a material issue and has independent relevance other than showing that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule. State v. Silguero, 608 So.2d 627, 629 (La. 1992); State v. Hopson, 98-943, pp. 12-13 (La.App. 5 Cir.3/30/99), 735 So.2d 81, 87, writ denied, 99-1315 (La. 11/12/99), 749 So.2d 650.
LSA-C.E. art. 404 B(1) provides:
Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Other crimes evidence may not be a mere subterfuge for depicting a defendant's bad character. Its probative value must outweigh its prejudicial effect. LSA-C.E. art. 403. If a defendant so requests, the court must instruct the jury as to the limited purpose for which other crimes evidence may be considered. State v. Prieur, 277 So.2d at 130. The appellate court will not overturn a ruling by the trial court on the admissibility of evidence of other crimes, absent an abuse of discretion. State v. Mosby, 595 So.2d 1135, 1139 (La.1992); State v. Bridgewater, 98-658 (La.App. 5 Cir. 12/16/98), 726 So.2d 987, 993.
Louisiana jurisprudence has long sanctioned the use of other crimes evidence to show modus operandi as it bears on the question of identity when the prior crime is so distinctively similar to the one charged, especially in terms of time, place, and manner of commission, that one may reasonably infer that the same person is the perpetrator in both instances. State v. Hills, 99-1750, p. 5 (La.5/16/00), 761 So.2d 516, 521. However, to assure that modus operandi or system evidence involving crimes similar to the charged offense does not become a means of introducing character and propensity evidence otherwise prohibited by LSA-C.E. art. 404(B), such evidence must be closely analyzed to determine whether it exhibits "such peculiar modes of operation to distinguish them as the work of one person." Hills, 99-1750 at pp. 6-7, 761 So.2d at 521 (quoting State v. Gaines, 340 So.2d 1294, 1297 (La.1976)). Thus, in order to be admissible, "the modus operandi employed by the defendant in both the charged and uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person." Hills, 99-1750 at p. 7, 761 So.2d at 521 (quoting State v. Henry, 436 So.2d 510, 513 (La. 1983)). However, even if the evidence was improperly admitted, an improper reference to other acts evidence is subject to the harmless error rule. State v. Battie, 98-1296 (La.App. 5 Cir. 5/19/99), 735 So.2d 844, 852 (citing State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101-102). The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. Id.
The state argues that it introduced the other crimes evidence to show motive; however, defendant contends that motive *872 was not a material issue in the case. Defendant also contends that the other crimes evidence was not admissible for the purpose of proving plan, system, or modus operandi, because the other crime, the aggravated battery of Miss Lewis, was completely different in nature from the charged offense, the second degree kidnapping of Ms. Smith. While we agree with defendant that admission of the evidence was wrong, we find the error to be harmless.
Comparing the charged offense to the legal requirements of La. R.S. 14:44.1, we conclude that the record supports the conclusion that defendant went to Ms. Smith's mother's house and enticed her to accompany him, her son and Miss Lewis back to his house. Once there, he physically abused Ms. Smith by dragging her into the house by her hair, beating her with a stick while children present in the home. He then locked her in a bedroom from which she could not escape. Further, she had no keys to the house and no way to call anyone for help. Regardless of his reasons for doing so, his conduct represents a violation of that statute. Thus, we believe the guilty verdict was not attributable to the other crimes evidence, but is amply supported by the record.
Defendant next argues that his 20-year sentence was constitutionally excessive. He contends that the evidence was not overwhelming. He did not perform any activities that would warrant a 20-year sentence. He had no prior criminal history. He worked, bought a house and was raising his four daughters. He took care of Ms. Smiths son even after she left home. He was under tremendous pressure and stress. He was sorry for the incident and that he was trying to rear his children the same way he had been. He believes that the trial court failed to consider the factors in La.C.Cr.P. art. 894.1.
The state contended that defendant's sentence was well within legislative guidelines, and that it was imposed by the judge to deter recidivism and to protect defendants children. As such, the sentence was not constitutionally excessive. Defendant orally objected to the excessiveness of the sentence at the sentencing hearing, but he did not urge any specific grounds in support of his objection. Additionally, he failed to file a motion for reconsideration as required by LSA-C.Cr.P. art. 881.1. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Hester, 99-426, p. 10 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 103. Accordingly, defendants sentence is examined only for constitutional excessiveness.
A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. Trial judges are granted great discretion in imposing sentences and sentences will not be set aside as excessive absent clear abuse of that broad discretion. State v. Bacuzzi, 97-573 (La.App. 5 Cir. 1/27/98), 708 So.2d 1065. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Watts, 99-311 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145.
Defendant was convicted of second degree kidnapping and sentenced to 20 years *873 of imprisonment at hard labor. La. R.S. 14:44.1 provides that the penalty for a conviction of second degree kidnapping is imprisonment at hard labor for not less than five nor more than 40 years. At least two years of the sentence is to be imposed without benefit of parole, probation, or suspension of sentence. At the sentencing hearing, the trial judge stated that she read numerous documents defendant gave her.
The trial judge noted that defendant wrote a lengthy letter to the court, and she read some excerpts from that letter. She concluded defendant was convinced he did nothing wrong, and that he believed he was following the dictates of the Old Testament. She stated:
Mr. Marshall does not understand the mores of American society. Mr. Marshall makes a good point. Maybe his family was out of control. Maybe his ex-wife was, or his girlfriend or whatever she was, was behaving in a manner that was displeasing to him.
A man in this country does not thereby gain the right to restrain a woman against her will, locked in a room without a key, or a telephone, or means of escape. A man in this country, within the social mores of our civilization as distinguishable of [sic] those of some other, is not permitted by the rules of criminal law to violently correct or discipline either a woman with whom he has an intimate relationship, nor his child.
Mr. Marshall does not understand that. He honestly does not understand that in American society we beat neither our wives nor our children either with a stick named Justice, or with anything else for that matter, and I am firmly convinced that Mr. Marshall will not, without a long period of time in which to reflect away from the individuals upon whom he has visited this violence, have any chance of coming to grips with the notion that this is not permissible or legal within the confines of American society.
I am firmly convinced that if Mr. Marshall was free to go about his way in our society, he would continue to visit violence upon the child from whom we heard testimony, and from his other children in this case.
Therefore, it is my understanding that Bianca is 14, and there are other younger children, therefore this Court views its job in part, this Court views it [sic] job as doing several things; one, to punish Mr. Marshall; two, to attempt to rehabilitate Mr. Marshall; and three, and foremost, which should be first, to protect his children and the rest of society from Mr. Marshalls views of his role in society large and small, that being two [sic] discipline at time through violence with a stick, or with his hands those with whom he comes into some sort of social contact, be it small or great.
This is third, however my first and most important goal of sentence is not accomplished in this case if Mr. Marshall is free to visit himself upon his children and other women in society, therefore it is the sentence of this Court that Mr. Marshall serve 20 years at hard labor, with credit for time served.
The trial court's reasons for imposing the sentence reflect that it was sentencing defendant for something other than the offense for which he was convicted. To our knowledge, defendant has not yet been tried for the incident involving, his daughter. While we agree that defendant's conduct toward his children and Ms. Smith is without justification, we find his sentence to be excessive in light of the fact that this is his first offense and in light of the prevailing jurisprudence. Accordingly, we *874 set aside defendant's sentence and remand this matter to the trial court to impose a sentence more narrowly tailored to punish defendant for this conviction, the second degree kidnapping of Ms. Smith.

CONCLUSION
Based on the foregoing, we affirm defendant's conviction but set aside his sentence and remand this matter to the trial court to resentence defendant.
CONVICTION AFFIRMED; REMANDED FOR RESENTENCING
DALEY, J. dissents with reasons.
DALEY, J., dissenting with reasons.
I respectfully dissent from the majority's affirmance of the defendant's conviction. I agree with the majority that the trial court erred in admitting the other crimes evidence. It appears from the record that the State introduced evidence of the other crime to show that defendant committed the charged offense, or that he was simply a bad person, and not to prove motive, system, plan, or modus operandi. In addition, I find that that evidence of prior bad acts was extremely prejudicial to the defendant, and thus, find its introduction to be reversible error.
While the record contains independent evidence of defendant's guilt I cannot say the wrongful introduction of prior bad evidence was harmless. The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. State v. Battie, 98-1296 (La.App. 5 Cir. 5/19/99), 735 So.2d 844, 852. In this case there were repeated references to the prior bad acts by multiple witnesses. The evidence of aggravated battery over shadowed the evidence of kidnapping so as to create prejudice. A reasonable juror would not ignore this prior bad act evidence in determining the defendant's guilt on the second degree kidnapping charge. Therefore, I would vacate the defendant's conviction and remand the matter for a new trial.
NOTES
[1] La. R.S. 14:44.1 provides:

A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
(1) Used as a shield or hostage;
(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
(3) Physically injured or sexually abused;
(4) Imprisoned or kidnapped for seventytwo or more hours, except as provided in R.S. 14:45(A)(4) or (5); or
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
C. Whoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.
[2] State v. Prieur, 277 So.2d 126, 130 (La. 1973).