436 So.2d 510 (1983)
STATE of Louisiana
v.
Richard HENRY.
No. 82-KA-1456.
Supreme Court of Louisiana.
June 27, 1983.
Rehearing Denied September 1, 1983.
*511 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Premila Chumbley, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
Vincent Wilkins, Jr., M. Michele Fournet, Asst. Public Defenders, for defendant-appellant.
CALOGERO, Justice.
Richard Henry was charged by grand jury indictment with the crime of aggravated rape, a violation of La.R.S. 14:42. He pled not guilty. After trial by jury, he was found guilty as charged and sentenced to the mandatory term of life imprisonment without benefit of parole, probation or suspension of sentence. Defendant appeals his conviction urging only one argument, that the trial court erred in admitting evidence of another crime. For the reasons which follow, we find no merit to the argument, and accordingly, affirm the conviction and sentence.
The facts involved in this case are as follows. At approximately 3:00 a.m. on January 27, 1982, the victim, Ms. Belainesh Negash a native of Ethiopia, was driving home after leaving her waitressing job at a Baton Rouge restaurant. She dropped off a co-worker, to whom she had given a ride home, and thereafter at some point noticed a red light flashing inside a vehicle which was following her. Assuming it was the police, she stopped her car. The vehicle which had been following her stopped behind her and a black male got out of the vehicle and approached her window. He was dressed in street clothes, a red short sleeve shirt and a jacket. He asked the victim for her driver's license. She gave him her driving permit.[1] The male looked at the permit and said it was alright, which raised Negash's suspicion since she was not accompanied by a licensed driver as was required by the permit. The male told her that she had run a stop sign. She protested that she had not. The male told her he was going to let her go this time, and started to return to his car. He apparently changed his mind and requested again that the victim stop. He then told her that he was not going to let her go and requested that she come back to his car while he called other police officers.
Ms. Negash then questioned the male's authority and he showed her a police badge inside a black wallet. He told her that she would have to get into the back of his car. She refused to do so and requested that she be allowed to go to a telephone and call a friend. At that point the stranger told Ms. Negash not to argue with him and produced a gun from his jacket pocket. He pushed her into the back of his car, got in the front and drove some distance from her car, and parked. She asked the male what he wanted and he stated he "wanted her." He then got into the back seat with the victim, removed her pants and had intercourse with her. After the intercourse, the stranger told her she could go. The victim further testified that she was afraid to walk off for fear that the male would shoot her in the back. So, she requested that he take her back to her car. As both were standing outside of her car, she asked for the return of her driving permit. As the male turned to walk back to his car to get the permit, Ms. Negash got in her car and fled from the scene.
*512 Ms. Negash immediately reported the incident to the police and she was examined at a local hospital. It was confirmed that she had had recent intercourse.
The following day, after a report of the incident appeared in the newspaper, a Ms. Boone telephoned the police to inform them of a somewhat similar incident. Ms. Boone told the police that, on January 24, 1982, four days earlier than the Negash incident, she had similarly been stopped in Baton Rouge about 3:30 a.m. by a plain clothed black male with hand cuffs, who showed her a police badge. The male accused her of speeding and asked for her license. He took her license and walked back to his own car but found that he had locked himself out of the car. At that point he returned the license to her and told her she could go. She did. On a return trip a brief time later, Ms. Boone passed the same location. The same male waved her over once again. He asked her if she would give him a ride to get an extra set of keys. Ms. Boone's husband, who at that point was accompanying his wife in a separate car, gave the man a ride to an apartment complex on Monet street. The man entered, came out, apparently with his reserve set of car keys, and was returned to his car. The Boones then went on their way.
Mr. Boone showed the police where he brought the man and gave a description of the vehicle. It matched a vehicle parked outside the apartment complex. The police ran a registration check on the vehicle and found that it was registered in the name of the defendant, Richard Henry. The police got a photograph of Henry and five other photographs, and showed them to Ms. Boone. She picked the defendant out of the group. The officers also showed the photographic line-up to Ms. Negash and she identified the defendant as the person who raped her on January 27th. Thereupon, the officers procured an arrest warrant for Richard Henry and a search warrant for his apartment and automobile.
The officers went to Mr. Henry's apartment and made the arrest. They also searched defendant's apartment and automobile. In the apartment, the officers found and seized a set of handcuffs from a night table, a red shirt and a jacket, matching the description the victim had given the officers of the perpetrator's clothing on the night of the rape. Upon searching the car, the officers found, in the trunk, a red flashing light, a plastic badge in a black wallet, and a gun. These items were also seized. The crime lab personnel also conducted a search of defendant's car and found a semen stain on the back seat of the car.
Defendant was originally arrested for impersonating an officer. However, after a physical line-up identification was conducted, at which Ms. Negash positively picked the defendant out of the line-up as the person who raped her, defendant was charged with the instant offense of aggravated rape.
At defendant's trial, all of the above evidence was introduced, as well as testimony by the victim identifying the defendant as the perpetrator of the rape. The Boones also testified at the trial. It is the admission of their testimony at trial which defendant complains of in this appeal.
Defendant contends that the trial court erred in allowing Mr. and Ms. Boone to testify concerning the events of January 24, 1982 because that testimony constituted inadmissible "other crimes" evidence.
Prior to trial, the prosecutor, in compliance with State v. Prieur, 277 So.2d 126 (La.1973) gave notice to defendant that evidence of another offense, allegedly committed by defendant, would be introduced at trial. The state contended that the other-crime evidence (which would be established by the Boones' testimony concerning the events of January 24, 1982) was so similar to the instant offense that it constituted a signature crime and was thus admissible to prove identity.
In State v. Hatcher, 372 So.2d 1024 (La. 1979), recently reaffirmed in State v. Talbert, 416 So.2d 97 (La.1982), this Court fully discussed the requirements for admissibility of other-crimes evidence under the modus operandi or system exception:
*513 In order to be admissible the extraneous offense evidence must meet several tests: (1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; State v. Prieur, 277 So.2d 126 (La.1973), see also, State v. Gaines, 340 So.2d 1294, 1298 (La.1977) (concurring opinion); McCormick on Evidence, § 190, pp. 451-52 (2d ed. 1972); (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; State v. Jackson, 352 So.2d 195 (La.1977); State v. Lee, 340 So.2d 1339, 1345 (La.1977) (concurring opinion); (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. State v. Frederick, 340 So.2d 1353 (La.1976); (4) the other crimes evidence must tend to prove a material fact genuinely at issue; State v. Ledet, 345 So.2d 474 (La.1977); (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect. State v. Sutfield, 354 So.2d 1334 (La.1978); State v. Jackson, 352 So.2d 195 (La.1977).
The defendant argues that the other-crimes evidence introduced at his trial fails to meet the first and fourth tests set out above, that is, that there was no clear and convincing evidence of defendant's commission of the other crime, and the evidence did not tend to prove a material fact genuinely at issue.
We find no merit in defendant's argument and hold, to the contrary, that the evidence of the January 24, 1983 incident admitted at defendant's trial was admissible.
First of all, the other crime, of course, was not that of aggravated rape. Rather it was that of impersonating a police officer. It was, however, similar to the defendant's alleged conduct which preceded the rape of Ms. Negash. It was admitted for the purpose of tending to prove that the defendant, Richard Henry (Ms. Boone's encountered stranger on January 24, 1982), was likely the person who accosted Ms. Negash on January 27, 1982. It did not relate specifically to whether the defendant raped Ms. Negash, the offense for which he was being tried. Consequently, the state would be permitted to introduce the evidence concerning the January 24th incident as well as that of the January 27th incident, provided, of course, that they were so nearly identical as to constitute signature crimes or crimes logically believe to be the work of the same person (identity). R.S. 15:445, 446 and Prieur and its progeny.
The evidence presented concerning the other impersonating crime (the Boone incident) was clear and convincing and the sum of the evidence established defendant's connection with that offense. The Boones testified that the man who stopped Ms. Boone was black, about six feet tall and weighed between 180-200 pounds, characteristics which matched Richard Henry. The description they gave of the car the perpetrator was using matched Henry's car. Mr. Boone took the police to the apartment complex where he had taken the stranger to get another set of keys and that apartment complex was where Henry lived. The police were shown the automobile of the stranger and it was Henry's car. Ms. Boone was shown a photographic line-up just four days after the incident, containing Henry's picture and five others, and she picked Henry out of the line-up. And, although she stated at trial that she was not absolutely sure whether the defendant was the same man that stopped her, she did testify "it looks like him ... his features are just about the same." On cross-examination she conceded an element of uncertainty, but nonetheless expressed that she thought it was Henry. There was "clear and convincing evidence of the commission of the other crime and defendant's connection therewith."
The modus operandi employed by the defendant in both the charged offense and the earlier offense was peculiarly distinctive *514 and logically the work of one person. In both incidents, black women, driving alone, at approximately 3:30 a.m., in the same general area in the City of Baton Rouge, were stopped by a black plain clothed male brandishing a police badge and accusing them of traffic violations. In each instance the male requested the driver's license of the women.
The other crime evidence was substantially relevant for a purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. In fact the other crime incident, the mere impersonation of a police officer, did not establish such bad character evidence as would tend to convince the jury that Henry was capable of committing an aggravated rape. The evidence was relevant for the purpose of proving the identity of the man who stopped the victim, Negash, but contributed nothing to the proof that Negash was raped. Whether in fact Henry raped Ms. Negash was entirely another matter for the jury to determine on the basis of the evidence before them concerning that rape. Evidence of the January 24th incident was relevant to establish the identity of Ms. Negash's accosting stranger. As bad character evidence it surely had very little impact on the jury.
Defendant argues that identity was not a material fact at issue in his case, and thus the other crimes evidence should not have been admitted. We disagree.
Defendant was charged with the crime of aggravated rape. Among other things, the state had the burden of proving, to the jury, beyond a reasonable doubt, that the individual on trial was the individual who raped the victim Negash. Defendant had not, prior to trial, admitted that he had had sexual intercourse with the victim (or anything else about any involvement of his in this incident). Nor did defense counsel, in opening argument to the jury, make any concession, that defendant had had consensual sexual intercourse with the victim, or anything else. The first witness called by the state was the victim. After she identified defendant on direct examination, defense counsel cross-examined her in an effort to undermine the accuracy and/or reliability of the identification. Thus, at the point in the trial when the other crime evidence was presented by the state, identity of the perpetrator of the offense was definitely at issue. The state is not required to rely entirely upon the victim's identification only to find, perhaps, at the conclusion of trial (by a jury verdict of acquittal), that it was not enough.
Finally, we determine that the probative value of the extraneous crimes evidence outweighed its prejudicial effect. As stated above, the defendant was on trial for aggravated rape. The extraneous crime evidence dealt with the defendant's impersonation of a police officer. It is unlikely that a jury is going to convict a man of aggravated rape because he impersonates a police officer. Its prejudicial effect, that is, that the jury might convict the defendant because he is shown to be a bad man, is minimal in this case if not non-existent. On the other hand the evidence was probative of the fact that it was this defendant Henry who stopped Ms. Negash at 3:30 a.m. on January 27th.
For these reasons we find no error in the trial court ruling allowing the admission of evidence of the other crime incident.

Decree
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Ms. Negash did not have a regular driver's license but only a driving permit that allowed her to drive while accompanied by a licensed driver.