761 So.2d 516 (2000)
STATE of Louisiana
v.
Jerry Jerome HILLS.
No. 99-KK-1750.
Supreme Court of Louisiana.
May 16, 2000.
*517 Richard P. Ieyoub, Attorney General, Scott M. Perrilloux, District Attorney, Counsel for Applicant.
Martin Edward Regan, Jr., New Orleans, Counsel for Respondent.
KIMBALL, Justice.[*]
Defendant, Jerry Jerome Hills, was charged by grand jury indictment with the crime of first degree murder, a violation of La. R.S. 14:30. We granted a writ of certiorari in this case to determine whether evidence of defendant's other crimes involving non-consensual sexual conduct against post-pubescent females is admissible as evidence in his upcoming prosecution for the murder of a juvenile under the age of twelve. After a review of the record and applicable law, we hold the other crimes evidence in this case does not fall under the exceptions provided by La. C.E. *518 article 404(B). Therefore, the trial judge erred in his determination that the other crimes evidence was admissible; thus, the ruling admitting the evidence is reversed and the matter is remanded for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY
On March 11, 1996, the body of 5-year-old Laquinta Mercedes "Sadie" Henderson was found floating in a pond adjacent to Yokum Road, near Hammond, Louisiana, south of Interstate 12. Sadie had been reported missing and was last seen at her grandmother's house on March 2, 1996, at approximately 4:00 p.m. The coroner, based on the remains of undigested pickles in Sadie's stomach, was able to fix the time of her death at March 2, 1996 between 4:00 p.m. and 6:15 p.m. Although the body was in a state of decomposition, the coroner was able to fix the cause of death as a blunt strike to the head. No signs of rape were found, but the coroner was able to discern anal and vaginal trauma.
On September 17, 1996, Hills was arrested for the murder of his niece Sadie based on an eyewitness who claims to have seen him at the pond on the night and time in question. A grand jury indicted him for the murder on October 17, 1996. The record shows, however, that the same eyewitness who places Hills at the pond identified the car he was driving as a maroon Ford. The two men this witness was with, who do not claim to have seen Hills' face through the car window and can only identify a black man as driving the car, also claim to have seen a maroon car. These two men had been fishing that day in the pond and when they returned to shore, right at dusk, they noticed the maroon car while waiting for their friend, the third witness. Based on the suggestive way the back of the car bounced, the two men assumed teenagers were having sex in the car. The car Hills was driving that day, which belongs to his live-in girlfriend Delores Singleton, is a black Chrysler LeBaron hatchback. Further, the tire tracks found in the spot identified by the witnesses do not match those of Hills' car nor did his tires have soil from the Yokum Pond area on them.[1] However, traces of blood and feces were found in the backseat of the black car, which match some DNA markers of Sadie.
On May 4, 1998, a Prieur hearing was held in which the State sought to introduce other crimes evidence against Hills during the guilt phase at his upcoming trial.[2] The evidence is of three alleged prior rapes and one alleged attempted rape. The testimony of various witnesses to these other alleged crimes was presented at the hearing.
Sgt. Melissa Spurling testified to the reported rape of L.D. on January 3, 1994.[3] Spurling testified that L. D., 15 years old at the time, told her that she obtained a ride from Hills around midnight in order to visit her mother at the North Oaks Hospital. Instead of taking her to the hospital, Hills drove past Manchac, Louisiana, on Highway 51 and told her to have sex with him or he would leave her there in the dark. After submitting to the sex because she was afraid to refuse, Hills drove her to the hospital to visit her mother. She saw her mother while Hills waited to take her home. Upon entering his truck for the second time that night, Hills told her they were not going straight *519 home. She took this to mean he was going to have sex with her again and she jumped out of the truck when he slowed down. Later that night, she described the incident to a friend of the family who took her back to the hospital where she reported the rape. Spurling testified that the doctor found inactive spermatoza in L.D.'s vaginal area, but no other trauma was found. A warrant was issued for Hills' arrest based on L.D.'s complaint, but it was not executed until more than two years later, after he was a suspect in Sadie's murder. Spurling claims she was unable to locate him, although he resided in Hammond the entire time.
Next, S. R., 43 years old, testified that on December 10, 1990, she got a ride from Hills, the brother of her live-in boyfriend, to Kentwood to pick up food stamps. While driving to Kentwood, Hills' truck broke down on the side of the highway a little before noon. S.R. claims that after the truck broke down, Hills hit her in the head three different times with a hammer and raped her in the bushes several times. As the sun began to set, the two then walked to a store to call Hills' brother to pick them up. After being dropped off at her house, S.R. reported the incident. However, upon examination by a physician, no signs of rape were found. A warrant was signed for his arrest, but Hills was never arrested on charges stemming from this incident. S.R. claims the officers told her they could not find Hills to execute the warrant.
Finally, S. B., 44 years old, testified that in 1993 she got a ride in the early morning hours from Hills after leaving a bar where she had been smoking crack. She claims that instead of taking her home, Hills took her to an isolated area near the airport and told her to have sex with him. When she tried to get out of the car, he punched her in the face. After having sex with her, he took her to her house. She told her daughter about the incident the next morning and two of her girlfriends when she met them at the crack house on the corner of her street. The incident was not reported to the police and S.B. admitted to smoking crack within 24 hours of her testimony at the hearing. S.B. testified that when Hills took her to her house, she grabbed a beer bottle on the floor of his truck, smashed him on the face with it, and broke his nose, She felt this action had given her "satisfaction" for the rape, which is why she did not report it.
The final witness, W. H., did not answer the subpoena and the court issued a warrant for her arrest. On May 18, 1998, with W.H. present, the Prieur hearing was continued. W.H. entered court in handcuffs as she had recently been arrested for the attempted murder of her husband. W. H., 25 years old, testified that on April 15, 1992, she accepted a ride from Hills after leaving a bar. She claims that instead of taking her home, Hills took her to Coonville Road. He then pulled a knife on her and told her to have sex with him. The two struggled and W.H. was able to escape. W.H. reported the incident to the police but later dropped the charges after Hills' mother gave her a $100.00 to do so.
During arguments, the State claimed these incidents show that Hills' modus operandi is that he picks his victims up in his car, transports them to another place and commits a crime against them at a place some distance from where they were initially picked up. Thus, this shows system according to the State, which goes the identity of Sadie's murderer. The trial court agreed that these incidents are "evidence of a method of operation and system" finding all of the witnesses highly credible and deciding to allow the introduction of this evidence in Hills' upcoming murder trial. As secondary findings, the trial court also specifically noted that the evidence showed motive for the abduction of Sadie, "that is, the motive being perhaps, a design to have sex upon her"[4] and *520 that the evidence could be used to refute a defense of accident.[5]
Defendant applied for supervisory writs with the First Circuit Court of Appeal, which was denied. State v. Hills, 98-1840 (La.App. 1 Cir. 10/8/98), ___ So.2d ___. On November 18, 1998, this court granted defendant's writ application and remanded the matter to the court of appeal for briefing, argument and opinion. State v. Hills, 98-2818 (La.11/18/98), 728 So.2d 876. The court of appeal affirmed the trial court's ruling finding that under La. C.E. art. 404(B) the proper burden of proof at a Prieur hearing is a preponderance of the evidence and the prior acts in this case were admissible to establish the identity and system of the defendant as a "person who used a motor vehicle to isolate female victims and who exercised control over them in order to commit criminal acts upon them ... [showing him to be] the same person who used a motor vehicle to isolate the victim in this case and who exercised control over her and then murdered her." State v. Hills, 98-1840 p. 11 (La.App. 1 Cir.1999), 737 So.2d 885, 892. We granted a writ of certiorari to determine whether evidence of defendant's other crimes involving non-consensual sexual conduct against post-pubescent females is admissible as evidence in his upcoming prosecution for the murder of a juvenile under the age of twelve. State v. Hills, 99-1750 (La.01/14/00), 752 So.2d 876.

LAW AND DISCUSSION
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. McDermitt, 406 So.2d 195, 200 (La.1981). Thus, to avoid this unfair inference that a defendant committed the crime charged simply because he is a person of bad character, other crimes evidence is inadmissible unless it has an independent relevancy besides merely showing a criminal disposition. State v. Lafleur, 398 So.2d 1074, 1080 (La.1981).
La. C.E. art. 404(B) provides, in pertinent part:
[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.
Further, this court has fully discussed the requirements for admissibility of other crimes evidence under the modus operandi or system exception. In order to be admissible, the extraneous offense must meet several tests:
(1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; State v. Prieur, 277 So.2d 126 (La.1973)[6] ...; (2) the modus operandi *521 employed by the defendant in both the charged and uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person. State v. Jackson, 352 So.2d 195 (La.1977); State v. Lee, 340 So.2d 1339, 1345 (La.1976) ...; (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character; State v. Frederick, 340 So.2d 1353 (La.1976); (4) the other crimes evidence must tend to prove a material fact genuinely at issue; State v. Ledet, 345 So.2d 474 (La.1977); (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect. State v. Sutfield, 354 So.2d 1334 (La.1978); State v. Jackson, 352 So.2d 195 (La.1977).
State v. Henry, 436 So.2d 510, 513 (La. 1983).
Finally, the requirements set forth in Prieur must be met as to notice and the showing by the State that the evidence is neither repetitive nor cumulative and is not being used to show the bad character of the defendant. Prieur, 277 So.2d at 130. Further, the court, at the request of the defendant, must offer a limiting instruction to the jury at the time the evidence is introduced and also must charge the jury at the close of the trial of the limited purpose the other crimes evidence serves in that they cannot convict the defendant for any crime other than the one charged. Id.
The State argues that the other crimes evidence shows a system or modus operandi that establishes the identity of defendant as a person who uses a motor vehicle to isolate females and then assault them in some manner. This court has long sanctioned the use of other crimes evidence to show modus operandi as it bears on the question of identity when the prior crime is so distinctively similar to the one charged, especially in terms of time, place and manner of commission, that one may reasonably infer that the same person is the perpetrator in both instances. State v. Moore, 440 So.2d 134, 137 (La.1983). However, to assure that modus operandi evidence involving crimes or acts similar to the charged offense does not become a passkey to the introduction of the character and propensity evidence that La. C.E. art. 404(B) prohibits, this court has "closely analyze[d] the ... transactions in order to determine whether they ... exhibit such peculiar modes of operations to distinguish them as the work of one person." State v. Gaines, 340 So.2d 1294, 1297 (La. 1976). Thus, in order to be admissible, "the modus operandi employed by the defendant in both the charged and uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person." Henry, 436 So.2d at 513 (citing State v. Jackson, 352 So.2d 195 (La.1977); State v. Lee, 340 So.2d 1339 (La.1976)).
In Henry, for example, this court held that the modus operandi of the defendant in the charged and earlier rape was peculiarly distinctive in that both victims, black women, were driving alone around 3:30 a.m. in the same area of Baton Rouge and were stopped by a black, plain-clothed male with a police badge who accused them of traffic violations. 436 So.2d at 514. In Lee, this court held that the methods used in two separate robberies were similar and a close connexity in both time and distance existed to establish system, knowledge and intent when both victims were approached on the street in front of their homes on foot, cut with a large knife and the two offenses were committed within a one-hour and fifteen-minute time span within a mile of each other. 340 So.2d at 1343; See also Moore, 440 So.2d at 137-38 ("The greater the degree of similarity of the offenses, the more the evidence enhances the probability that the same person was the perpetrator, and hence the *522 greater the evidence's probative value, which is to be ultimately weighed against its prejudicial effect.").
The State argues the other crimes evidence shows a system by Hills because in three of the assaults defendant transported the women away from their intended destination to remote locations where he then took advantage of the cover of darkness to attack and/or rape them inside his vehicle and, in the case at hand, defendant transported Sadie to a remote location where he then took advantage of the cover of darkness to attack and kill her.[7] Accepting that in the case at issue the evidence the State seeks to introduce at trial proves that these other crimes were committed by Hills,[8] the modus operandi employed in the four prior assaults, especially as compared to the murder of Sadie, is not so distinctive that one must logically say they are the work of the same person.
The State's showing at the Prieur hearing clearly falls short of meeting the requirements of the definition of modus operandi for purposes of proving identity through distinctive or idiosyncratic marks. The use of a vehicle and darkness to facilitate sexual assaults has, unfortunately, long been commonplace. See e.g. State v. Sauter, 125 Mont. 109, 232 P.2d 731, 731 (1951) ("Sexual acts, whether rape or no rape, originating in barroom pickups, powered by the urge, and consummated in automobiles, are entirely too common in this day and age to have much evidentiary value in showing a systematic scheme or plan."). Further, conspicuously missing from defendant's crimes is "a close connexity in both time and distance," which is often a hallmark of crimes exhibiting a particular modus operandi. Lee, 340 So.2d at 1343; State v. Vince, 305 So.2d 916 (La.1974); State v. Grant, 295 So.2d 168 (La.1973). In this case, the four prior incidents span a period of four years, from 1990 (S.R.) to 1994 (L.D.) and occurred in a variety of locations, from an area south of Manchac, Louisiana (L.D.), to 1-55 outside Hammond (S.R.). Sadie's murder occurred two years after the latest prior incident and all of the locations of the prior incidents are considerably distant from the pond off Yokum Road. Additionally, the prior acts involve a variety of methods used by defendant to subdue the women once he isolated them. L.D. was threatened, but not struck; S.R. was hit several times without warning with a hammer; S.B. was punched in the face and W.H. had a knife held to her throat. Cf. Vince, 305 So.2d at 922 (holding evidence of two prior rapes admissible where incidents shared not only a close temporal and physical proximity to the charged offense of rape within one month in the same general area in Metairie, Louisianabut also a distinctive *523 "mark" consisting of the fact that on each occasion defendant lured the victims into a deserted area under the pretense of looking for his lost dog). Further, all four other crimes involved post-pubescent women, whereas the crime charged involves a five-year-old female. Finally, all four other crimes that the State seeks to introduce are of rape or attempted rape while the crime charged is murder. For these reasons, the pattern shown by the other crimes evidence in this case is so general that it could fit any number of rapists. Therefore, the other crimes evidence fails to establish a sufficient idiosyncratic pattern of conduct for purposes of proof of identity.
As the other crimes evidence in this case does not exhibit such peculiar a mode of operation to distinguish it as the work of one person, its introduction at trial creates the danger of the jury using it as character and propensity evidence. Gaines, 340 So.2d at 1297. Whatever evidentiary gain is made by the introduction of this evidence at trial to bolster the eyewitness' identification of Hills at the scene of the crime at the approximate time of the murder, must be weighed against the potential prejudice of placing in evidence three other rapes and one attempted rape before the jury in a case involving the murder of a five-year-old child. While matters that are relevant should not be excluded merely because they show the accused has committed other offenses, because "evidence of other offenses is so strongly prejudicial, `the greatest care ought to be taken to reject such evidence, unless it is plainly necessary to prove something which is really in issue.'" State v. McArthur, 97-2918, p. 4 (La.1998), 719 So.2d 1037, 1042 (citing Moore, 278 So.2d at 787-88). Because the other crimes evidence here fails to meet the requirements of showing a modus operandi for purposes of proving identity, to allow it into evidence presents a real danger that the factfinder may be lured into declaring guilt on a ground different from the proof specific to the offense charged by generalizing defendant's earlier bad acts into bad character to show he acted in conformity therewith in the case at hand, which is what La. C.E. art. 404(B) specifically bars. See Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997).

CONCLUSION
For these reasons, we hold the other crimes evidence in this case does not fall under the exceptions provided by La. C.E. article 404(B). Therefore, the trial judge erred in his determination that the other crimes evidence was admissible.

DECREE
For the reasons stated herein, the decisions of the trial court and court of appeal admitting the other crimes evidence against defendant are reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[*] Calogero, C.J., not on panel; recused. See Rule IV, Part 2, § 3.
[1] Hills' brother, Anthony Hills, was also a suspect in this case before Hills' arrest. He owns a maroon Mercury Sable, but no traces of blood were found in its back seat, nor do the tire tracks match those at the pond.
[2] The only issue before this court is whether the other crimes evidence is admissible under La. C.E. art. 404(B) during the guilt phase of defendant's trial. However, in case of a conviction in the guilt phase, the issue of whether the other crimes evidence is admissible during the penalty phase is not before this court.
[3] The victim of the alleged rape, L. D., did not testify at the hearing. However, the court did warn the State that at trial L.D. herself had to testify in order for the incident to be admissible.
[4] With this ruling, the trial court seems to be misapplying the "lustful disposition" motive, which this court has held can only be applied in certain cases involving sex crimes against children. State v. McArthur, 97-2918, p. 2 (La.1998), 719 So.2d 1037, 1040. As the other crimes evidence in this case involves sexual attacks on post-pubescent females, they cannot be used to show defendant's predisposition to sexually attack children. Id.
[5] In this case, defendant has not alleged accident as a defense. Thus, this ruling by the trial court was gratuitous and we need not address the issue here.
[6] Article 1104 was added by Section 2 of Act 51 of the Third Extraordinary Session of 1994 to the Louisiana Code of Evidence, which provides that "[t]he burden of proof in a pretrial hearing held in accordance with State v. Prieur, 277 So.2d 126 (La.1973), shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404." This court has not yet addressed to what extent Article 1104 and the burden of proof required by the federal rules, as interpreted by Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), has affected the burden of proof required for the admissibility of other crimes evidence. Because the other crimes evidence in this case is not admissible on other substantive grounds, we need not address this issue.
[7] The State concedes that the fourth instance, involving S.R., which occurred in the bushes on the side of the highway during daylight hours, fits the pattern only in the most general terms.
[8] In the instant case, whether the standard applied at the Prieur hearing was a preponderance of the evidence or clear and convincing is largely irrelevant. Generally, eyewitness or victim testimony alone is sufficient to support a verdict. See State v. Mussall, 523 So.2d 1305, 1311 (La.1988). A conviction requires a verdict of guilty beyond a reasonable doubt; thus, if eyewitness or victim testimony is sufficient to sustain such a verdict, it is clearly sufficient at a Prieur hearing under the clear and convincing standard. See State v. Walker, 394 So.2d 1181, 1184 (La.1981) (holding "[t]he testimony of ... the victim of the alleged beatings administered by the defendant constitutes clear and convincing evidence that the defendant committed the criminal acts."). In this case, S.R., W.H. and S.B. each testified in detail about the alleged attacks; further, S.R. and W.H. reported the incidents at the time they occurred. Although L.D. did not testify at the hearing, the trial judge ruled the evidence of her rape would only be admissible if she testified at trial and she did give a detailed report to the police when the incident occurred. Thus, because the testimony present at the Prieur hearing meets the higher standard of clear and convincing and would therefore be admissible under either standard, we need not address the issue of the proper burden required under La. C.E. art. 1104.