769 So.2d 730 (2000)
STATE of Louisiana
v.
Byron WILLIAMS.
No. 99 KA 2576.
Court of Appeal of Louisiana, First Circuit.
September 22, 2000.
*731 Doug Moreau, Beau Brock, Dana Cummings, Baton Rouge, for Appellee State of Louisiana.
Frederick Kroenke, Baton Rouge, for Defendant/Appellant Byron Williams.
BEFORE: WHIPPLE, FOGG, JJ. and BECNEL, J. pro tempore[1].
WHIPPLE, J.
Defendant, Byron Williams, Jr., was charged by bill of information with three counts of armed robbery, one count of *732 aggravated burglary, and one count of felon in possession of a firearm, violations of LSA-R.S. 14:64, 14:60, and 14:95.1, respectively. The first count of armed robbery and the aggravated burglary charge ended in a mistrial. The jury found defendant guilty as charged on the remaining charges.[2]
Defendant subsequently was re-tried on the armed robbery and aggravated burglary charges which earlier had resulted in a mistrial. The jury returned verdicts finding defendant guilty as charged on both counts. Thereafter, the state filed another bill of information charging defendant with being a third-felony habitual offender and seeking to enhance the sentence to be imposed for the armed robbery conviction. The trial court initially refused to adjudicate defendant to be a third felony offender. The court sentenced defendant to sixty-six years for the armed robbery and thirty years for the aggravated burglary, to be served concurrently with each other and with defendant's prior convictions.
However, after the state filed a motion to reconsider sentence, the trial court changed its ruling, and adjudicated defendant to be a third-offense habitual offender. The court vacated its original sentence on the armed robbery conviction, but nevertheless resentenced defendant to the same term of sixty-six years imprisonment. In doing so, the court rejected the state's argument that it was required to impose a life sentence under LSA-R.S. 15:529.1 A(1)(b)(ii).[3]
In an appeal taken by the state, this Court vacated the enhanced sentence for the armed robbery conviction because of the trial court's failure to articulate reasons for deviating from the mandatory life sentence required by LSA-R.S. 15:529.1 A(1)(b)(ii). Upon remand for resentencing, the trial court again imposed a sentence of sixty-six years at hard labor. Defendant has now appealed, raising one counseled and two pro se assignments of error, as follows:
Counseled Assignment of Error
1. The trial court erred in failing to exclude evidence of defendant's prior armed robbery convictions.
Pro Se Assignments of Error
1. The trial court erred in denying defendant's motion to suppress.
2. The trial court erred in allowing the testimony of Melvin Carter regarding the identity of a voice recorded on two audiotapes.

FACTS
Defendant was convicted in the instant case of the January 17, 1995, armed robbery of Matthew Bennett. Bennett arrived home after dark that evening. As he entered the house, he suddenly heard a man's voice telling him not to move or he would be shot. Because the lights were off, Bennett could see only the silhouette of a man with something covering his *733 head. The intruder made Bennett lie face down on the floor, and he tied up Bennett's arms and legs with duct tape. The intruder then filled Bennett's car with items from the house. Bennett described the intruder's demeanor as being very polite and calm. Before departing, the intruder told Bennett he would telephone to let him know where he was leaving the car. Bennett managed to free himself and summoned the police.
While he was giving the police an account of the robbery, his telephone began ringing. The police instructed him not to answer it. Soon thereafter, the intruder called 911 and told the operator that he was a friend of Matthew Bennett and was concerned that something was wrong with him. He provided the police with Bennett's address and asked that the police check on him. The intruder also left a message on Bennett's answering machine, as promised, informing him of the whereabouts of his car.
Defendant's aggravated burglary conviction arose from the following facts. At 9:30 p.m. on June 4, 1995, Carolyn Myers exited her home to place her garbage can at the curb. In her carport, she was grabbed by a man wearing black pants, black shoes, a light colored shirt and a black ski mask with light rings encircling the eye and mouth holes. Myers screamed and the attacker placed a gun to her head. During the ensuing struggle, Myers managed to break free and run into the street.
David Straub lived nearby and heard Myers' screams. He ran toward Myers' garage and observed her struggling with and breaking free from her attacker. The attacker then entered Myers' residence and retrieved a black bag. Seeing Straub, the perpetrator pointed his gun at Straub and ordered him to stop. Straub instead ran and hid in a nearby garage. While so secreted, he observed the perpetrator calmly walk down a well-lit path to a neighboring apartment complex. The perpetrator was dressed exactly the same as he had been during the struggle, except that he had removed his mask.
The police were notified immediately and began searching the area near the apartment complex. Shortly after hearing the police broadcast, Sergeant Ernest Rhodes stopped a vehicle driven by Patrick Quinones for a traffic violation as it was leaving the neighboring apartment complex. Defendant was a passenger in the vehicle. Discovering there was an outstanding arrest warrant for defendant. Sergeant Rhodes placed him under arrest and asked him to step from the car. Upon exiting, Sergeant Rhodes observed defendant kicking a black knapsack underneath the front passenger seat. After placing defendant in a secure position, Rhodes retrieved the knapsack and emptied its contents on the hood of the vehicle. Inside he discovered duct tape, a ski mask, a pair of black pants with a belt still within the belt loops, a white shirt with a tie hung around the collar and the sleeves inside out, and black tennis shoes.
Approximately twenty minutes after the incident, Caroline Myers and David Straub were escorted to the location so that a show-up lineup could be conducted. Straub identified defendant as the man he had seen walking toward the apartment complex, but noted that he was not dressed in the same clothing. Straub also identified the clothing contained in the knapsack as that worn by the attacker. Myers was unable to identify defendant, but did note that the clothing contained in the knapsack was similar to that worn by her attacker.
Shortly thereafter, Quinones signed a consent to search form. A search of the vehicle led to the discovery of two guns hidden between the carpet and floorboard of the front passenger seat.

DISCUSSION

Other Crimes Evidence
In his sole counseled assignment of error, defendant argues the trial court erred *734 in allowing the state to introduce evidence of two prior armed robberies committed by him.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence due to the substantial risk of grave prejudice to the defendant. To avoid the unfair inference that a defendant committed the crime charged simply because he is a person of bad character, other crimes evidence is inadmissible unless it has an independent relevancy besides merely showing a criminal disposition. State v. Hills, 99-1750, p. 5 (La.5/16/00), 761 So.2d 516, 520.
Louisiana Code of Evidence article 404(B) provides, in pertinent part that:
[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.
In the present case, the state argues the other crimes evidence at issue shows a system or modus operandi that establishes the identity of defendant as the person who committed the instant offenses. Louisiana jurisprudence has long sanctioned the use of other crimes evidence to show modus operandi as it bears on the question of identity when the prior crime is so distinctively similar to the one charged, especially in terms of time, place and manner of commission, that one may reasonably infer that the same person is the perpetrator in both instances. Hills, 99-1750 at p. 6, 761 So.2d at 521.
However, to assure that modus operandi or system evidence involving crimes similar to the charged offense does not become a means of introducing character and propensity evidence otherwise prohibited by LSA-C.E. art. 404(B), such evidence must be closely analyzed to determine whether it exhibits "such peculiar modes of operation to distinguish them as the work of one person." Hills, 99-1750 at pp. 6-7, 761 So.2d at 521, quoting State v. Gaines, 340 So.2d 1294, 1297 (La.1976). Thus, in order to be admissible, "`the modus operandi employed by the defendant in both the charged and uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person.'" Hills, 99-1750 at p. 7, 761 So.2d at 521, quoting State v. Henry, 436 So.2d 510, 513 (La. 1983).
In Hills, the Louisiana Supreme Court delineated the requirements for admissibility of other crimes evidence under the modus operandi or system exception as follows:
(1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith[4]; (2) the modus operandi employed by the defendant in both the charged and uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed *735 the crime on trial because he is a man of criminal character; (4) the other crimes evidence must tend to prove a material fact genuinely at issue; [and] (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect. (citations omitted).
Hills, 99-1750 at pp. 5-6, 761 So.2d at 520-521.
A pretrial Prieur hearing was not held in the present case. However, prior to the completion of jury selection, the court heard argument of counsel on the issue of admitting the other crimes evidence. The state argued the evidence was admissible because it showed a "system of committing crimes" that was relevant to the material issue of identity. In opposition, the defense argued the evidence was unnecessary to the state's case and was unduly prejudicial to defendant. The court ruled, without reasons, that the evidence should be admitted. Defense counsel objected to the ruling.
In accordance with the trial court's decision, the state presented testimony at trial from Joe Dloniak, Gina Dloniak, and several employees of a Shoney's restaurant, all of whom were victims of defendant's two prior armed robberies. The state also presented the testimony of two police officers involved in the investigation of those robberies. The jury was not advised that defendant was convicted of the robberies, being merely told that the evidence related to other crimes defendant was alleged to have committed. Moreover, the court gave an instruction to the jury regarding the limited purpose for which the other crimes evidence was introduced.
The victims of defendant's prior offenses testified as follows. Mrs. Dloniak, her husband, and two young daughters were asleep when Mrs. Dloniak was awakened by a knock on her front door at approximately 6:30 a.m. on March 24, 1995. As Mrs. Dloniak opened the door, a man carrying a dark bag and wearing dark pants and a dark ski mask with light highlights around the eye and mouth holes pushed his way into the home. He was armed with a gun and followed Mrs. Dloniak down the hall to her bedroom. The entire family was forced to lie face down on a bed. The robber asked for tape, but the Dloniaks could not remember where any was located. The robber then tied Mr. Dloniak up with dog leashes, but later found some electrical tape which he placed over the leashes. Numerous items were taken from the Dloniak home and placed in their pick-up truck. Before leaving, the intruder told the Dloniaks he would leave a message on their answering machine telling them where they could find their truck. He did so, and the truck was retrieved.
During a photographic line-up prepared after the Myers incident on June 4, 1995, Mr. Dloniak identified defendant as the man who had purchased stereo equipment from him in response to a newspaper advertisement about a week before his family was robbed. In addition to speaking to defendant in person at the time of the sale, Mr. Dloniak spoke to him once on the telephone, and again in person when defendant returned some of the stereo equipment to him. Despite the fact that he felt the robber was attempting to disguise his voice by pushing it lower, Mr. Dloniak testified that he was "pretty much a hundred percent sure," based on his voice, that the robber was the same man who brought the stereo equipment from him a week earlier. He explained that the robber at times slipped into speaking in a normal voice, before slipping back into what appeared to be a disguised voice.
The intruder at the Dloniak home left a 1986 Chevrolet Spectrum in the driveway. The car was traced to Denise James, an employee of Shoney's Restaurant on Siegen Lane. Approximately one and one-half hours before the Dloniak robbery, Lawrence Calloway, Denise James and Linda Franklin had reported to work at Shoney's. As Calloway entered the kitchen, he was accosted by a man wearing black clothes and gloves and a black ski mask with highlighting around the eye and *736 mouth holes. The man was armed with two guns. The employees refused to give him the combination to the safe, and he forced them into a freezer before escaping in Ms. James' Chevrolet Spectrum.
We note that the initial requirement of establishing that defendant committed the other crimes was met with respect to both prior robberies since a jury found defendant guilty beyond a reasonable doubt of those offenses. The next requirement for the admission of other crimes evidence for the purpose of establishing identity is to establish that the modus operandi or system employed by the defendant in both the instant offenses and the prior offenses was so distinctive that they clearly were the work of the same person. In the present case, we conclude this requirement clearly was met with respect to the Bennett and Dloniak robberies.
In each of these incidents, the robbery was committed inside the victims' homes in the same general area of south Baton Rouge. In both cases, the perpetrator escaped in the victims' vehicle, after loading the vehicle with stolen items. The perpetrator also made the victims of both robberies lie face down, and tied up Mr. Dloniak and Mr. Bennett with home repair tape (electrical tape in one case, duct tape in the other). A distinct and unusual feature of both robberies was that the perpetrator advised the victims in each instance that he would not damage their vehicles and would telephone them the location of the vehicles. Thereafter, he did call and left messages telling them where the vehicles were located. The perpetrator's demeanor was another distinctive characteristic of both incidents. Each of the three victims testified that the perpetrator's demeanor was calm and that he was very polite to them. A police detective who testified at trial indicated that the manner in which these crimes were committed was very unusual, and that he had never encountered any other robberies committed in such a manner.
Given these circumstances, it is clear the perpetrator employed a very similar method in both robberies. Moreover, the incongruous politeness of the perpetrator as he robbed the victims in both cases, as well as the fact that he telephoned to inform them of the location of their vehicles, are each strikingly distinctive similarities in themselves. Indeed, the similarities between the Bennett and Dloniak robberies are of such a distinctive nature that one must logically say they are the work of the same person. As such, the evidence that defendant committed the Dloniak robbery clearly was relevant for a purpose other than merely to show that defendant was a person of criminal character. Because of the distinctive similarities between the two robberies, this evidence was highly probative as to the issue of the perpetrator's identity in the Bennett case. Further, while the prejudicial effect of this evidence was not insignificant, we conclude the resulting prejudice was substantially outweighed by the exceedingly probative value of the evidence. Thus, the trial court did not err in allowing the state to introduce evidence of the Dloniak robbery with respect to the count charging defendant with the Bennett robbery.
However, we are unable to reach the same conclusion with respect to the attack upon Ms. Meyers which resulted in the charge of aggravated burglary. Some similarities undoubtedly exist between the Myers incident and the Dloniak robbery. In both incidents, the intruder was dressed in dark clothing, wore a dark ski mask with lighter highlights around the eyes and mouth, carried a dark sack or bag, and was armed with a handgun. Also, both crimes occurred at the victim's home. However, the Dloniak robbery occurred after the intruder knocked, then forced his way into the home when Ms. Dloniak opened the door. The attack on Ms. Meyers occurred outside the home as she was leaving her garage. Moreover, the wearing of dark clothing and the use of a ski *737 mask (even a dark ski mask with lighter highlights) to hide the face are not unusual aspects of such crimes. Further, it is beyond question that the use of a handgun is a common aspect of many armed robberies. Since these similarities fall far short of being so peculiarly distinctive that one must logically say they are the work of the same person, the evidence regarding the Dloniak robbery was of little, if any, probative value as to the issue of identity in the Meyers incident. Thus, it did not meet the requirements for the admission of others crimes evidence under the modus operandi or system exception with respect to the Myers incident.
We likewise conclude that the other crimes evidence introduced regarding the Shoney's robbery was inadmissible other crimes evidence as to both of the instant offenses. We recognize that some similarities do exist between the offenses. For instance, in the Shoney's and Myers incidents, the armed perpetrator wore a ski mask and dark clothing, and apparently utilized a black bag or knapsack during the offense. In both the Bennett and Shoney's robberies, the perpetrator was waiting inside when the victims entered the building, and he escaped in the victim's vehicle in each case. However, the perpetrator in the Shoney's case did not telephone to inform the victim of the location of her stolen vehicle as the robber did in the Bennett case. Further, unlike the Shoney's robbery, the Bennett and Myers incidents occurred at the victim's homes. In the Bennett case, the perpetrator took money from the victim's wallet, as well as household and personal property. In contrast, the Shoney's robbery occurred at a business, with the robber's primary intent being to steal money from the restaurant's safe. There was no testimony that he even attempted to take money from the victim's wallets or purses.
From a close analysis of the respective crimes, we conclude there were no truly distinctive similarities between the Shoney's robbery and either the Bennett robbery or the Myers incident. Thus, since this extraneous other crime evidence failed to show a system or modus operandi that established the identity of defendant as the person who committed the instant offenses, it was not relevant for any purpose other than to show defendant's criminal disposition. The trial court erred in admitting this evidence.
However, the determination that other crimes evidence was improperly admitted at trial does not end our inquiry. The erroneous admission of other crimes evidence is a trial error subject to harmless error analysis. Accordingly, we must now determine whether the error was harmless in this case. The standard applied in making this determination is whether the verdict rendered was surely unattributable to the error. See State v. Johnson, 94-1379, pp. 17-18 (La.11/27/95), 664 So.2d 94, 102.
Based on our review of the record, we find that the guilty verdicts returned in the instant case surely were unattributable to the erroneous admission of the extraneous other crimes evidence. The identity of the perpetrator was the only truly contested issue at trial as to both charges against defendant. Regarding the Myers charge, the state presented the testimony of Mr. David Straub, an eyewitness to the attack upon Ms. Myers. After Myers escaped, Straub saw the assailant retrieve a black bag from the house. The assailant then came toward Straub, pointing the gun at him. Straub ran and hid. A few seconds later, he saw defendant walking away. He testified that defendant had the same build and was dressed exactly as the assailant had been, with the omission of the ski mask. There was no doubt in his mind that defendant and the assailant were the same person.
The jury also heard testimony that defendant was arrested leaving a nearby apartment complex shortly after the attack. A black knapsack was found in the car in which defendant was a passenger. *738 The knapsack contained clothing matching the description of the assailant's clothing. The condition of the clothing suggested they had been hurriedly removed. A ski mask, which Myers identified as being the one worn by her assailant, also was found in the knapsack.
Considering the above, it is clear that the jury rested its verdict on evidence properly introduced by the state rather than on the evidence regarding the two robberies previously committed by defendant. Because the verdict finding defendant guilty of aggravated burglary was not attributable to the improperly admitted other crimes evidence, the erroneous admission of that evidence constituted harmless error.
We reach the same conclusion with respect to the verdict finding defendant guilty of the armed robbery of Matthew Bennett. First, we note that we need consider the effect only of the erroneous admission of the Shoney's evidence. As discussed above, the evidence concerning the Dloniak robbery was admissible as to this charge. Moreover, the evidence that defendant committed the Dloniak robbery was highly probative as to the identity of the perpetrator in the Bennett robbery, since the peculiarly distinctive similarities between the two robberies logically indicated they were the work of the same person. Additionally, Bennett testified that the voice of the person leaving a message on his answering machine regarding the location of his vehicle was the voice of the man who robbed him. In connection therewith, the state presented the testimony of Melvin Carter, a former employer of defendant, who unequivocally identified the voice on that taped message as being defendant's voice. Mr. Carter also testified that defendant was the caller on the 911 tape who claimed to be a friend of Matthew Bennett and asked that someone check on him shortly after the robbery. Finally, a number of items stolen in the Bennett robbery, including a videocassette recorder, a camera, an electric razor, and clothing, were discovered in a search of defendant's home conducted pursuant to a search warrant.
In view of the other evidence presented by the state establishing defendant's guilt, we are convinced that the verdict finding defendant guilty of the Bennett robbery was not attributable to the erroneous admission of the evidence concerning the Shoney's robbery.
Thus, this assignment of error is without merit.

Pro Se Assignments of Error
In his first pro se assignment of error, defendant argues the trial court erred in denying his motion to suppress physical evidence seized at the time of his arrest. Defendant also argues the procedure employed by the police in having the witness, David Straub, identify him at the scene of the arrest was unduly suggestive.
Both of these issues were considered and rejected by this Court in the appeal taken by defendant following his convictions for the Dloniak and Shoney's robberies. We adhere to the views expressed in that appeal. See State v. Williams, 96-1039 (La.App. 1st Cir.3/27/97), 698 So.2d 1065 (unpublished), writ denied, 98-0975 (La.9/18/98), 724 So.2d 754.
Thus, for the reasons stated therein, we find this assignment of error lacks merit.
In his second pro se assignment of error, defendant argues the trial court erred in allowing a state witness, Mr. Melvin Carter, to give voice identification evidence at trial identifying the voice on the Bennett answering machine and 911 tapes as being that of defendant. Again, this issue was considered and rejected by this Court in defendant's prior appeal. Citing LSA-C.E. arts. 701 and 901, this Court concluded that the testimony in question was admissible because it was "rationally based on the witness' own perceptions and [was] helpful to the determination of a fact" at issue. Williams, 96-1039, at p. 9 Moreover, we conclude that the probative value *739 of the evidence substantially outweighed its prejudicial effect.
Accordingly, as the voice identification evidence was properly admitted, this assignment of error is likewise without merit.

CONCLUSION
For the reasons assigned, defendant's conviction and sentence for aggravated burglary are affirmed. Defendant's conviction for armed robbery also is affirmed.[5]
CONVICTION AND SENTENCE FOR AGGRAVATED BURGLARY AFFIRMED; CONVICTION FOR ARMED ROBBERY AFFIRMED.
NOTES
[1] Judge Mary Hotard Becnel of the Fortieth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The trial court sentenced defendant to fifty years at hard labor, without benefit of probation, parole or suspension of sentence, for each of the two armed robbery convictions, to be served concurrently, and ten years at hard labor for being a felon in possession of a firearm, to be served consecutively to the armed robbery sentences. Defendant was subsequently adjudicated a third-felony habitual offender and resentenced to sixty-six years imprisonment. On appeal, this Court affirmed those convictions and sentences in an unpublished opinion. See State v. Williams, 96-1039 (La.App. 1st Cir.3/27/97), 698 So.2d 1065 writ denied, 98-0975 (La.9/18/98), 724 So.2d 754.
[3] LSA-R.S. 15:529.1 A(1)(b)(ii) provides that:

If the third felony or either of the two prior felonies is a felony defined as a crime of violence under [LSA-]R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
[4] Both the Third and Fourth Circuits have concluded the repeal of former LSA-C.E. art. 1103 and the addition of article 1104 have resulted in a burden of proof less than "clear and convincing" being required for the admission of other crimes evidence. See State v. Langley, 95-2029, p. 5 (La.App. 4th Cir.9/4/96), 680 So.2d 717, 720-21, writ denied, 96-2357 (La.2/7/97), 688 So.2d 498; State v. Crawford, 95-1352, pp. 16-19 (La. App. 3d Cir.4/3/96), 672 So.2d 197, writ denied, 96-1126 (La.10/4/96), 679 So.2d 1379. In State v. Hills, 98-1840, p. 10 (La.App. 1st Cir.5/14/99), 737 So.2d 885, 891, this Court agreed that the noted legislative changes had eliminated the requirement that the other crimes evidence be proven by clear and convincing evidence. In reversing the opinion rendered by this Court in Hills, the Supreme Court noted that it need not address the burden of proof issue, since it had concluded that the other crimes evidence was not admissible on other substantive grounds. Hills, 99-1750 at p. 5 n. 6, 761 So.2d at 521.
[5] The sentence imposed upon defendant as a third-felony offender for the armed robbery is the subject of a separate appeal in State v. Williams, 99-2577 (La.App. 1st Cir.9/22/00), 771 So.2d 322 also rendered this date.