PETTIGREW, J.
| ¿The defendant, Brandon Day, was charged by bill of information with attempted simple burglary, a violation of La. R.S. 14:62 and La. R.S. 14:27. The defendant entered a plea of not guilty. After a hearing, the trial court granted the State’s motion to use other crimes evidence pursuant to La.Code Evid. art, 404(B). After a trial by jury, the defendant was found guilty as charged and subsequently sentenced to four years imprisonment at hard labor. The defendant now appeals, assigning error to the admission of other crimes evidence. For the following reasons, we affirm the conviction and sentence.
STATEMENT OF FACTS
On June 4, 2011, near 2:30 a.m., Richard Poling, a resident of an apartment complex located at Windrush Drive, off of C.M. Fagan Drive, in Hammond, called 911 as he observed two African-American males jump over a wooden privacy fence and approach several vehicles in the complex parking lot. The individuals approached Poling’s vehicle and after unsuccessfully attempting to gain entry through the doors and windows, moved to another vehicle. Poling observed as the perpetrators forced a gapped car window further down on the vehicle that belonged to Aaron Sinclair, Poling’s roommate, who was asleep at the time. As Poling observed them reaching into Sinclair’s vehicle, he yelled out his front door to the individuals, and they jumped back over the fence. Poling reported his observations in real time to the 911 dispatcher. Officer Terry Sanchez and Detective George Bergeron of the Hammond Police Department were in the area and responded to the dispatch.
As the police neared the scene, Poling indicated that the perpetrators were fleeing toward Commerce Street. Pol *813 ing described the perpetrators’ attire. As Officer Sanchez and Detective Ber-geron approached Commerce Street, they observed two individuals who fit the description provided by Poling. The individuals, the defendant and Fred Dunhams, were detained, and Poling positively identified them as the perpetrators.
|,.ASSIGNMENT OF ERROR
In the sole assignment of error, the defendant argues that the trial court erred in finding admissible evidence of other crimes consisting of the defendant’s prior convictions of fifteen simple burglaries that took place two years before the instant offense. The defendant argues that the evidence inflamed the jury against him and further argues that the jury convicted him because of his bad character. The defendant specifically contends that evidence of a prior incident, to which he pled no contest, involving the simple burglaries of fifteen vehicles in apartment complexes in Tangipahoa Parish, prejudiced the jury’s perception as to whether he was the person seen in Poling’s apartment complex on the dark night in question. The defendant notes that, although he pled no contest to the fifteen prior offenses, he was not found in possession of any of the victims’ property and only became a suspect after being named as an accomplice in a statement by the perpetrator who was in possession of the stolen goods. The defendant further notes that there was no videotape, eyewitness, or physical evidence to show that he was involved in those burglaries. The defendant concludes that he was unduly prejudiced as a result of the admission of the other crimes evidence and requests that his conviction for the instant offense be reversed.
Prior to the trial herein, the State filed a motion of intent to use evidence of other crimes pursuant to La.Code Evid. art. 404(B) and State v. Prieur, 277 So.2d 126 (La.1973), to show identity, motive, opportunity, intent, plan, system, knowledge, and absence of mistake at trial. Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. Hills, 99-1750, p. 5 (La.5/16/00), 761 So.2d 516, 520. Under Article 404(B)(1), other crimes evidence “is not admissible to prove the character of a person in order to show that he acted in conformity therewith.” The evidence may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. La. Code Evid. art. 404(B)(1). At least one of the enumerated purposes in Article 404(B) must be at issue, have some independent relevance, or be |4an element of the crime charged in order for the evidence to be admissible under Article 404. Thus, to be admissible under Article 404(B), evidence of the defendant’s prior bad acts must meet two criteria: (1) it must be relevant to some issue other than the defendant’s character, and (2) its probative value must be greater than its potential to unfairly prejudice the jury. See La.Code Evid arts. 403 & 404(B). A trial court’s ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Galliano, 2002-2849, p. 4 (La.1/10/03), 839 So.2d 932, 934 (per curiam).
The procedure to be used when the State intends to offer evidence of other criminal offenses was formerly controlled by Prieur. Under Prieur, the State was required to prove by clear and convincing evidence that the defendant committed the other crimes. Prieur, 277 So.2d at 129. However, 1994 La. Acts 3d Ex.Sess. No. 51 *814 added La.Code Evid. art. 1104 and amended Article 404(B). Article 1104 provides that the burden of proof in pretrial Prieur hearings, “shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404.” The burden of proof required by Federal Rules of Evidence Article IV, Rule 404, is satisfied upon a showing of sufficient evidence to support a finding by the jury that the defendant committed the other crime, wrong, or act. See Huddleston v. U.S., 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). The Louisiana Supreme Court has yet to address the issue of the burden of proof required for the admission of other crimes evidence in light of the repeal of La.Code Evid. art. 1103 and the addition of Article 1104. However, numerous Louisiana appellate courts, including this court, have held that burden of proof to now be less than “clear and convincing.” State v. Millien, 2002-1006, p. 11 (La.App. 1 Cir. 2/14/03), 845 So.2d 506, 514; See also State v. Williams, 99-2576, p. 7 n. 4 (La.App. 1 Cir. 9/22/00), 769 So.2d 730, 734 n. 4. We note that the initial requirement of establishing that defendant committed the other crimes was clearly met in this case as the defendant admitted to the police his participation in the offenses and later pled no contest to the offenses.
1 ^Deputy Kenneth Schleigelmeyer of the Tangipahoa Parish Sheriffs Office, the officer who investigated the 2009 multiple vehicle burglaries, testified at the pretrial Prieur hearing. On June 5, 2009, during the early morning hours before daylight, multiple vehicles were burglarized in three closely situated apartment complexes located at East Yellow Water Road, Lamino Lane, and Village Drive. Most of the vehicles were already unlocked, while the windows were busted for a few. Items such as money, DVD players, CDs, media players, and other electronic devices were removed from the vehicles. A complainant gave a description of one of the suspects who she saw running away from her vehicle, later identified as Jamarcus Watson. When the police located Watson, the defendant, who was using the name Brandon Hurst at the time, walked up and it was determined that he was also involved. Both subjects were Mirandized and questioned. They admitted their participation and implicated each other. According to Officer Terry Sanchez, the apartment complexes wherein the 2009 burglaries took place were within an approximate one mile distance from the apartment complex on Windrush Drive, where the instant offense took place.
In finding the evidence admissible, the trial court noted that the defendant was sentenced on the prior offenses on May 25, 2011, that he had been incarcerated since his 2009 arrest up to that sentencing date, and less than two weeks later the instant offense was committed. The trial court further noted that the prior offenses, as the instant offense, were committed in the middle of the night with one accomplice and involved unlocked vehicles or forced entry through a vehicle window. The trial court further noted that the apartment complexes where the prior offenses took place were located within a mile of the complex where the instant offense took place. The court found the evidence of other crimes admissible to prove motive, opportunity, intent, preparation, and plan. At the trial, Deputy Schleigelmeyer testified consistent with his Prieur hearing testimony.
In support of the trial court’s ruling, we note that it appears that the prerequisites as to the intent exception are satisfied in this case. Before other crimes evidence can be admitted as proof of intent three prerequisites must be satisfied: |fi(l) *815 the prior acts must be similar; (2) there must be a real and genuine contested issue of intent at trial; and (3) the probative value of the evidence must outweigh its prejudicial effect. See La.Code Evid. arts. 403 & 404(B); State v. Kahey, 436 So.2d 475, 488 (La.1983). The Louisiana Supreme Court has recognized the principle that where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed. State v. Cupit, 189 La. 509, 179 So. 837, 839 (1938). In State v. Blank, 2004-0204 (La.4/11/07), 955 So.2d 90, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007), the State sought to introduce evidence that the defendant killed or attempted to kill the occupants of other residences during the commission of aggravated burglaries. The Louisiana Supreme Court found that the evidence met the three requirements enunciated in Ka-hey. The Supreme Court reasoned that “the acts were similar, in that they each involved home invasions where defendant entered the home to steal money, was caught by the resident, each of whom were somewhat elderly, and then killed or attempted to kill the resident.” The Supreme Court further reasoned that “specific intent was a genuine issue at trial, in that it is an essential element of the crime, and was contested.” Blank, 2004-0204 at 42, 955 So.2d at 125. Similarly, in State v. Williams, 96-1023, p. 30 (La.1/21/98), 708 So.2d 703, 725-726, cert. denied, 525 U.S. 838, 119 S.Ct., 99, 142 L.Ed.2d 79 (1998), the Supreme Court found that evidence demonstrating that the defendant shot a man during a robbery just hours before the crime charged was admissible in a first degree murder prosecution. The Supreme Court noted that the evidence of the earlier shooting was relevant to show that the defendant intended to fire the gun at the victim even though he claimed that the gun accidently discharged.
As to the first requirement of Ka-hey, clearly in this case the prior acts were similar to the offense being tried. The offenses took place in generally the same area and all in apartment complex parking lots, were committed overnight or during the early morning hours before sunrise, were committed with the use of an accomplice, and 17involved the unauthorized entry of vehicles through an unlocked door or forced entry through a window.
Second, in this case specific intent was a genuine issue at trial, in that it is an essential element of the crime that was tried. In order to convict the defendant of attempted simple burglary, the State was required to prove beyond a reasonable doubt that the defendant had the specific intent to enter a dwelling, vehicle, watercraft, or other structure without authorization, with the specific intent to commit a felony or any theft therein. La. R.S. 14:27(A); La. R.S. 14:62(A); State v. Perkins, 517 So.2d 314, 316 (La.App. 1 Cir. 1987), writ denied, 519 So.2d 141 (La.1988). While the defense mainly contested the issue of identity in this case, the State still had the burden of proving specific intent, an essential element of the crime charged, and the jury was specifically instructed in this regard prior to deliberations.[1]
*816 As to the third element of Ka-hey, the defendant argues that he was unduly prejudiced by the introduction of the evidence at issue. The defendant also notes that the prior burglaries took place over two years before the instant offense. Nonetheless, the fact that the other acts or crimes happened some time before the offense for which the defendant is on trial is not sufficient, in and of itself, to require the exclusion of the evidence. Remoteness in time, in most cases, is only one factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect. Generally, a lapse in time will go to the weight of the evidence, rather than to its admissibility. State v. Jackson, 625 So.2d 146, 149 (La.1993). Further, in determining whether the probative value of the evidence outweighs its prejudicial effect, the underlying policy is not to prevent prejudice (since evidence of other crimes |sis always prejudicial), but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime. State v. Humphrey, 412 So.2d 507, 520 (La.1982) (on rehearing).
We further note that based on the facts end circumstances herein, the other crimes evidence at issue is also relevant as to the defendant’s motive, plan, and system. For these reasons, the defendant’s sole assignment of error is without merit.
Nonetheless, even if we were to determine that the other crimes evidence was improperly admitted in this case, that would not end our inquiry since the erroneous admission of other crimes evidence is a trial error subject to harmless error analysis. The standard applied in making this determination is whether the verdict rendered was surely unattributable to the error. See State v. Johnson, 94-1379, p. 18 (La.11/27/95), 664 So.2d 94, 102.
Based on Poling’s testimony, there was no doubt in his mind that the defendant was one of the perpetrators herein. As he routinely did, around 2:00 to 2:15 in the morning, Poling had just let his dog out to relieve itself and was standing on his porch when he initially spotted the perpetrators. He called his dog in, shut his apartment door, and stood on the stoop of his apartment when he heard mumbling and the kicking of rocks coming from Commerce Street. Poling observed the two African-American males as they initially approached, but could not get over the chain-link fence, and subsequently, removed a board from, and jumped over, the wooden privacy fence. Poling went back into his apartment and continued to observe the individuals through his windows. The view from the windows was well lit. As he observed the individuals approaching the vehicles, Poling was able to see their faces and attire. He noted that they were wearing jeans, and one had on a loose white t-shirt, while the other had on a white muscle shirt. He had his cell phone on his person at the time and used it to call 911. Poling noted that his apartment windows covered the length of the parking lot, and by moving from the living room window to the bedroom window, he was able to maintain a view of the suspects as they approached different vehicles. Poling continued to observe as Sinclair’s gapped car window was forced down another four or five inches, and the suspects *817 1 ^reached into the car just before Poling yelled out to them. The police were near the complex and simultaneously communicating with the dispatcher as Poling reported his observations in real time. As Poling indicated that the suspects fled toward Commerce Street, Officer Sanchez and Detective Bergeron approached that location and spotted the suspects.
As to the moments before the police detained the suspects, Poling testified, “I walked outside.... The two guys after they jumped the fence ... they got about halfway down Commerce Street.... I saw the cruisers pull in, and they got the two guys.” When asked if he ever lost sight of the perpetrators before the police detained them and obtained the on-the-scene identifications, Poling stated, “Just when they were running behind that pine tree. That’s when I had to go out into the grassy area of our property to actually get a complete view of Commerce Street.” He testified that he was certain that they were the two people attempting to break into vehicles in the complex parking lot.
Poling was essentially able to observe the perpetrators from the moments before they gained entry into the complex parking lot and attempted to enter several vehicles until the police detained them. He was absolutely certain of his on-the-scene identification and subsequent in-court identification of the defendant. Aaron Sinclair testified that he did not know the defendant and did not give him authorization to enter his vehicle. Considering the above, it is clear that the jury rested its verdict on evidence properly introduced by the State rather than on the evidence regarding the burglaries previously committed by the defendant. Based on our review of the record, we find that the guilty verdict returned in the instant case surely was unattributable to any error in the admission of the extraneous other crimes evidence. Thus, if the admission of the evidence was erroneous, the error was harmless beyond a reasonable doubt. See La. Code Crim. P. art. 921
DECREE
For the above and foregoing reasons, we find no merit to the defendant’s arguments on appeal and affirm the defendant’s conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.

. We note that in Blank, the defendant argued that the State should not have, been permitted to introduce the other crimes evidence to prove the specific intent element of first degree murder because he did not present evidence or argue at trial that he lacked specific intent. Before noting that the defendant's claim that he did not contest the issue of intent lacked a factual basis in that case, the Supreme Court cited U.S. v. Brantley, 786 F.2d 1322, 1329 (7th Cir.1986), cert. denied, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 *816 (1986), wherein the 7th Circuit Court of Appeals held that when a defendant is charged with a crime and specific intent is an essential element of that crime, the government may introduce evidence of prior or subsequent acts to establish the element of intent even if the defendant has not placed his intent into question. Blank, 2004-0204 at 43, 955 So.2d at 125.