DRAKE, J.
1 ¡¿The State charged the defendant, Prentiss Arnold Wallace, by bill of information with possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A)(1) (count l).[1] The defendant pled not guilty and, following a jury trial, the jury became deadlocked and could not reach a verdict; accordingly, a mistrial was declared. The State tried the defendant a second time, again only on count 1. In his second jury trial, the jury found the defendant guilty of the responsive offense of attempted possession with intent to distribute cocaine. See La, R.S. 14:27(D)(3) and La. R.S. 40:979(A). The defendant filed a postverdict judgment of acquittal, which the trial court denied. The State filed a habitual offender bill of information, alleging the defendant had prior convictions for possession of cocaine and distribution of cocaine. A hearing was held on the matter, and the defendant was adjudicated a third-felony habitual offender. The defendant was sentenced to thirty-years imprisonment at hard labor. The defendant now appeals, designating two assignments of error. We affirm the conviction, habitual offender adjudication, and sentence.

FACTS

On September 5, 2013, Sergeant Dennis Bush, with the Slidell Police Department, received information that the defendant and Leo Charles were selling crack cocaine in the Lincoln Park neighborhood and the Pontchartrain Drive area in Slidell. Sergeant Bush also had information that the defendant and Charles were in a blue Nissan Xterra with an Alabama license plate. Sergeant Bush knew the defendant and Charles from previous investigations. Sergeant Bush’s partner, Detective John Cole, was in a separate vehicle patrolling the same area. A short time later, Sergeant Bush spotted the Xterra and followed it. Charles was driving Land the defendant was in the front passenger seat. The Xterra pulled over near Nassau Drive. An unknown female approached the driver’s side on foot, and the officers observed a quick hand-to-hand transaction between the female and driver. Suspecting he witnessed a drug transaction, Sergeant Bush followed the Xterra and radioed other officers in the area to assist with the mobile surveillance.
Sergeant Bush followed the Xterra to the Westchester neighborhood, where it pulled to the side of the road on Olive Drive. Sergeant Bush watched the defendant get out of the Xterra and walk to the driver’s side of a silver Saturn parked in a residence driveway. The defendant conducted what appeared to be a quick hand-to-hand transaction with the driver of the Saturn, later identified as Lindsay Rolston. The defendant got back in the Xterra and left. About forty-five seconds later, Rol-ston left, traveling in the same direction as the Xterra. Sergeant Bush and his captain followed Rolston, while other officers in the area were instructed to follow the Xterra.
A few miles down the road, Rolston pulled into an Exxon station parking lot, and Sergeant Bush effected a traffic stop. Sergeant Bush asked Rolston if she had drugs in the car and she replied that she did; he asked for permission to search her purse and she consented. Sergeant Bush found in Rolston’s purse seven Alprazolam *799 (Xanax) pills and a small plastic bag with cocaine residue on it. The bag, or portion of a baggie was small, and would have held no more than a gram qf. cocaine.
Detective Richard Walden, with the Sli-dell Police Department, was one of the officers asked to follow the Xterra. Detective Daniel Seuzeneau and Detective Michael Deckleman, both with the Slidell Police Department, also followed the Xterra. Detective Walden was in an' unmarked F-150 truck. Detectives Seuzeneau and Deckleiman were in an unmarked Charger, with Detective Seuzeneau driving. The officers were instructed to stop the Xterra. There were some other officers in 1 ¿pursuit, as well, including Detective Cole. On Old Spanish Trail, near the 1-10, several officers attempted to stop the Xterra. With lights activated by some marked units, the officers attemptéd to block the Xterra in the ’ front and in the back. Charles maneuvered around the vehicle in front of him and fled, setting off a high-speed chase.
Charles sped off of Old Spanish Trail onto the service road, traveling the wrong direction on. a one-way street. At this point, the defendant began throwing items out of the passenger-side window. Charles made his way onto the interstate (I — 10) and headed toward the 1-10 twin-span bridges (connecting Slidell and New Orleans). Charles barreled down the bridge, heading toward New Orleans, reaching speeds of 100 miles per hour. By this time, as many as a dozen officers were engaged in the pursuit. When Charles reached New Orleans East, he took the Michoud Boulevard exit. He took a left, which brought him back over the 1-10. Just as Charles cleared the overpass, he lost control ■ of the vehicle. ■ The Xterra jumped the curb and left the roadway. It continued to roll through the dirt and grass before coming to a stop near a clearing in the woods. The' defendant and Charles had jumped from' the. Xterra before it had stopped rolling and fled on foot. They were both ■ eventually apprehended. Detective Walden searched the Xterra and found, under the driver’s' seat, a piece of cellophane containing cocaine residue. The cellophane was likely the bottom portion of a cigarette pack. The defendant did not testify at trial.

ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant argues the evidence was insufficient to-support the conviction. Specifically, the defendant contends that, while he did possess cocaine, the State failed to prove that he was possessing the cocaine with the intent to distribute it.
|rA conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. The Standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). See also La. C.Cr.P. art. 821(B); State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 2001-2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
*800 Under La. R.S. 40:967(A)(1), it shall be unlawful for any person knowingly or intentionally to possess with intent to produce, manufacture, distribute,, or dispense, a controlled dangerous substance classified in Schedule II (cocaine, in this case). A defendant is guilty of.distribution when he transfers possession or control of a controlled dangerous substance to intended recipients. See La. R.S. 40:961(14); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132, 1135. To support a conviction for possession with intent to distribute cocaine, the State is required to prove both possession and specific intent to distribute it. See State v. Young, 99-1264 (La.App. 1 Cir. 3/31/00), 764 So.2d 998, 1006.
Under La. R.S. 14:27(A), an attempt is defined as follows:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall Lbe immaterial whether, under" the circumstances, he would have actually accomplished his purpose.
It is. well .settled that intent- to distribute may be inferred from the circumstances. Factors useful in determining whether the State’s circumstantial evidence is sufficient to prove intent to distribute include: (1) whether the defendant ever distributed or attempted to distribute illegal drugs; (2) whether the drug was in a form usually associated with distribution; (3) ' whether the amount was such to create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant’s actual or constructive possession was inconsistent with personal use; and (5) the presence of other paraphernalia evidencing intent to distribute. State v. Smith, 2003-0917 (La.App. 1 Cir. 12/31/03), 868 So.2d 794, 800.
The defendant in brief concedes there was a piece of cellophane with cocaine residue on it found under the driver’s seat of the Xterra.. The defendant, asserts, however, that beyond this evidence, the State failed to prove the defendant had the intent to distribute cocaine. According to the defendant, none of the evidence was direct, but only circumstantial. The defendant points put that the .State did not prove that the “refuse discarded from the Xterra was cocaine,” Following .what appeared to be a hand-to-hand transaction between the defendant and Rolston, the vehicle the defendant was in, the Xterra, and Rolston’s. .vehicle were followed by the police. When Rolston was stopped, the police found in her purse a small plastic bag with cocaine residue. The defendant points out that the bag had not been tom open, no twist tie was found, and Rolston was not in possession of any items associated with cocaine use, like a straw, razor blade, or rolled-up dollar bill. Also, the defendant notes, Rolston told the police she only got a cigarette from the defendant, and denied the cocaine' came from him. The' defendant further points out that actual drugs were never seen being thrown from [7the window by the defendant. Detective Richard Walden saw “items thrown out of it,” but could not tell what they were. The defendant notes that Detective Michael Deckleman saw “some type of clear cellophane with a white substance in it” that he believed to be crack cocaine. Detective John Cole, however, went back to the area where he thought the items were discarded, but did not find anything. The defendant suggests that, while the piece of cellophane found in the Xterra tested positive for cocaine, this did not prove that the refuse thrown from the Xterra was cocaine. According to the defendant, “the State inferred” that the piece *801 of cellophane containing cocaine residue in the Xterra “had made its way back into the Xterra after being discarded.” Further, according to the defendant, the residue of cocaine found in the Xterra was not such a large quantity of cocaine so as to preclude the inference that it was for- personal use.
Regarding the five Smith factors, while the small amount of drugs found was not indicative of an intent to distribute, the first factor did appear to be present in this case, that is, the defendant, prior to the instant offense, had- distributed illegal drugs. Also, the cocaine residue found in the clear plastic baggie in Rolston’s purse was arguably in a form usually associated with distribution. Further, the lack of paraphernalia suggestive' of consumption, such as a crack pipe, found in the Xterra, could indicate the cocaine was not for personal use. See State v. Keys, 2012-1177 (La.App. 4 Cir. 9/4/13), 125 So.3d 19, 28, writ denied, 2013-2367 (La.4/4/14), 135 So.3d 637.
While what the defendant threw from the window during the two-parish high-speed chase was -never.identified, Detective Deckleman testified that he was a passenger in the vehicle being driven by Detective Daniel Seuzeneau, and that he was less than one car length from the Xterra (the vehicle' the defendant was the passenger in). Detective Deckleman testified that he was very close to the Xterra and that he could see the defendant throwing from the passenger window “some Istype of clear cellophane with a white substance in it that we believe to be crack cocaine.” Detective Cole testified that as soon as the police turned on their lights and sirens (at the start of the chase), he could see the defendant frantically fooling around with a small item on the back of the seat. According to Detective Cole, the defendant’s hand movements were consistent with someone tearing the end off of a baggie. The detective noted that he had seen this kind of movement before.
The jury heard evidence that just prior to the high-speed chase, it appeared the defendant had been involved in two hand-to-hand transactions. : The jury further heard evidence that in May of 2010, the defendant had pled guilty to distribution of cocaine. Most importantly, it would seem, Leo Charles, the driver of the Xterra, took about a dozen police officers on-a two-parish high-speed chase, refusing to stop. The -only reason they stopped in New Orleans was, that Charles had lost control of the Xterra. Even then, Charles,, and ..the defendant got out of the .Xterra-and fled on foot.- To escape the police in the Xter-ra, Charles ran a stop sign-, ran a red light, traveled the wrong way on a one-way street, and consistently sped well above the speed limit. At the beginning of the chase, before Charles got onto the .twin span bridge, the defendant was moving frantically about inside the vehicle and then began,-throwing items from the open passenger window. .
When a ease involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987). None of the actions by the defendant, before, during, or after the chase, suggest innocent motives. Any rational juror could have reasonably concluded that, given the two apparent hand-to-hand transactions the defendant had just recently engaged in; the high-speed chase; the defendant’s attempting to escape on foot after the chase; and the |fldefendant’s criminal history with selling cocaine, that the defendant was not *802 throwing merely trash or non-incriminating -items from the Xterra while being chased by the police. It is clear the defendant did not want the police to find what was in the vehicle and sought to dispel any evidence of the apparent contraband he was in possession of before the police could stop them. See State v. Carter, 363 So.2d 893, 896-97 (La.1978) (where the actions of the defendants . during, the high speed chase indicated that they were intent on divesting themselves of the heroin by throwing it out of the windows).
Given all of the evidence, especially the testimony of Detectives Deckléman and Cole, and Sergeant Bush, a rational juror could have concluded that the defendant was selling small baggies of cocaine. Cocaine was found in both the Xterra and in the purse of Lindsay Rolston, whom it appeared, according to Sergeant Bush, had engaged in a hand-to-hand transaction with the defendant. When the defendant was tossing items from the window, a rational conclusion could have been that the defendant'was ripping open the small baggies of cocaine and letting' the wind and the speed dissipate , the powdered cocaine. The defendant then tossed the empty (or nearly empty) baggies of cocaine. This would explain why the police did not find any drugs in the area where the defendant had apparently tossed items from the window.
While the defendant suggested in brief that no twist-tie was found on Rolston’s baggie with cocaine residue and that Rol-ston was not in possession of any items associated with cocaine use, like a straw or razor blade, a juror could have concluded that the baggie was not sealed with a twist tie, or that it was and that something as small as a twist tie simply was not found by the police because it had been tossed, or was somewhere in her car. As Sergeant Bush pointed out, these small comers of ■baggies. that dealers ■ put cocaine in are often twisted closed and tied in a knot. Further, a juror could have concluded that no items were needed to j1flhigest the cocaine; instead Rolston needed only to open the bag and snort, its contents directly. As Sergeant Bush pointed out in his testimony, “You can just ingest it from the bag.” The defendant also noted in brief that Rolston told, the police she only got a cigarette from the defendant, and denied that the cocaine found in her purse came from him. On cross-examination, however, when Rolston was asked how this cocaine got into ,her car, Rolston .stated that she did not know. She also stated that she had used cocaine in. the past. A juror could have determined that it simply was not plausible how a person could, not know how cocaine came to be in her purse. Thus, having lied about that, a juror could have concluded that Rolston was lying about getting only a - cigarette from the defendant.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony-about factual matters,' the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The;trier of fact’s determination of the- weight to be given evidence is not subject to appellate review. An appellate court will-not reweigh the evidence to overturn a factfinder’s determination of guilt. State v. Taylor, 97-2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a “thirteenth juror” in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a *803 trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La.App. 1st Cir.1985). In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins, 2003-1980 (La.4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).
lnSince distributing can include the mere delivery of a controlled dangerous substance by physical delivery, see La. R.S. 40:961(14), the jury’s verdict reflected the reasonable conclusion that the defendant, at the very least, attempted to' possess cocaine with the intent to distribute it. In finding the defendant guilty, the jury clearly rejected the defense’s theory of innocence. See Moten, 510 So.2d at 61.
After a thorough review of the record, we find that the evidence, supports the jury’s verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of attempted possession with intent to distribute cocaine. See State v. Calloway, 2007-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam). This assignment of error is without merit.'

ASSIGNMENT QF ERROR NO. 2

In his second assignment of error, the defendant argues the trial court erred in admitting other crimes evidence. Specifically, the defendant contends that evidence of a prior 2010 conviction for distribution of cocaine was not similar to the instant offense and it was introduced only to show he was a man..of bad character.
The defendant notes in brief that prior to the first trial, the State sought to introduce the defendant’s 2010 conviction.for distribution of cocaine as other crimes evidence, pursuant to La. C.E. art. 404(B). A Prieur hearing was. held, and the trial court ruled the evidence inadmissible. See State v. Prieur, 277 So.2d 126 (La.1973). After the first jury was hung and a mistrial declared, the State again, prior to the second trial, filed a motion to introduce the defendant’s 2010 conviction. Another Pri-eur hearing was held and the trial court found the evidence admissible. The défen-d'ant states in brief, “Despite the other crimes evidence and 112the facts being exactly the same, this time the same trial judge found the other crimes evidence was admissible.”
At the outset, it should be noted that the trial court did riot reverse itself,1 as suggested by the defendant,”' but instead issued a different ruling based on an amended, more focused treatment of the issue by the State. At1 the second Prieur hearing (just prior to the second trial),- the prosecutor provided the trial court a revised written memo in support of the other crimes evidence) and he revamped his argument at the Pnew hearing. The trial court, thus, had many other considerations at the second Prieur hearing that it did not have at the first hearing. In its first Notice of Intent to use other crimes evidence, the State cited several cases in support of its position that La. C.E. art. 404(B)(1) permits other crimes evidence when intent,' identity, absence of mistake or' accident, motive, opportunity, preparation or plan are contested. At the first Prieur hearing,, defense counsel argued that the defendant’s modus operandi was dissimilar between the instant cáse and the case for which the defendant was convicted in 2010. In .ruling the other crimes evidence inadmissible, the trial court stated, “Based upon a lack of proof of similarity, *804 the Court finds that' prejudicial effect of this particular evidence outweighs the probative value.”
In its second Notice of Intent to use other crimes evidence, the State providéd a more detailed memorandum of law and focused mainly on the issue 'of intent. At the conclusion of the second PHeur hearing,' the trial court took the matter under advisement and, twelve days later, issued the following ruling:
, I had held open a ruling concerning the evidence of other crimes, and I’m prepared to render my ruling at this time.
Prior to the trial herein State filed a motion of intent to, use evidence of other crimes pursuant to Louisiana Code of Evidence Article 404(b) and State versus Prieur, 277 So.2d 126 Louisiana 1973 to show the defendant’s intent .to distribute cocaine. Under Article | ia404(b)l other crimes evidence may be admissible for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. At least one of the enumerated purposes in Article 404(b) must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible under 404. Before other crimes evidence can be admitted as proof of intent, three prerequisites must be satisfied: The prior acts must be similar, there must be a real and genuine contested issue of intent at trial, and the probative value of the evidence must outweigh it’s [sic] prejudice effect. Louisiana Supreme Court has recognized the principal that where the element of intent is regarded as an essential ingredient of the crime charged it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed.' State-versus Day. With regard to the first requirement that act that the act be similar, Julie Boynton testified that in 2009 she purchased cocaine from the defendant Prentiss Wallace. In the instant case Mr. Wallace is on trial- for possession with the intent to distribute cocaine. Second, specific intent to distribute cocaine is an essential element of the offense charged. Finally, the Court finds that the probative value of the evidence outweighs its prejudicial effect. Therefore, the Court finds that’ the evidence is admissible.
Louisiana Code of Evidence article 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person .in order to -show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of. motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
 Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy |Mbesides simply showing a criminal - disposition. State v. Lockett, 99-0917 (La.App. 1 Cir. 2/18/00), 754 So.2d 1128, 1130, writ denied, *805 2000-1261 (La.3/9/01), 786 So.2d 115. A trial court’s ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Galliano, 2002-2849 (La.1/10/03), 839 So.2d 932, 934 (per curiam).
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.
We find no abuse of discretion in the trial court’s ruling that evidence of the defendant’s 2010 conviction for distribution of cocaine was admissible at the instant trial. 'The prerequisites as to the intent exception were satisfied in this case. Before other crimes evidence can be admitted as proof of intent, three prerequisites must be satisfied: (1) the prior acts must be similar; (2) there must be a real and genuine contested issue of intent at trial; and (3) the probative value of the evidence must outweigh fits prejudicial effect. See La. C.E. arts. 403 and 404(B); State v. Day, 2012-1749 (La.App. 1 Cir. 6/7/13), 119 So.3d 810, 814-15. Where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed. Id. at 815; see also State v. Blank, 2004-0204 (La.4/11/07), 955 So.2d 90, 125-26, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007); State v. Williams, 96-1023 (La.1/21/98), 708 So.2d 703, 725-26, cert. denied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998).
|1fiIn the instant casé, Sergeant Bush testified that he observed the defendant get out of the Xterra, walk to Rolston, who was in-the driver seat of a silver Saturn, and conduct a quick hand-to-hand transaction with her. At the second (and first) Prieur hearing, Detective Julie Boynton, with the St. Tammany Parish Sheriffs Office, testified that she drove to a house in an undercover capacity. The defendant walked up to her window and gave her crack cocaine in exchange for $100.00. Both crimes were clearly similar. They both involved the defendant approaching the driver-side of a vehicle and conducting a hand-to-hand drug transaction with the female driver.
In this case, intent was a genuine issue at trial. In fact, the issue of intent was defense counsel’s theory of defense or innocence. While cocaine was found in the Xterra the defendant was in, defense counsel argued at both Prieur hearings and his opening statement that the State could not prove the defendant had 'the requisite in: tent to distribute. In order to prove the element of intent to distribute, "the State had to prove in this case the defendant’s subjective specific liatent to possess in order to distribute. See State v. Gordon, 93-1923 (La.App. 1 Cir. 11/10/94), 646 So.2d 1005, 1011. Evidence, therefore, of the defendant’s involvement in a prior drug delivery was clearly an''exception to the general prohibition'against evidence of other crimes. See State v. Jackson, 2005-923 (La.App. 5 Cir. 3/28/06), 926 So.2d 72, 78-79, writ denied, 2006-1589 (La.1/8/07), 948 So.2d 121. Accordingly, the other crimes evidence at issue had an independent relevance to show intent pertaining to the instant offense and was therefore ad *806 missible for this purpose under La. C.E. art. 404(B)(1). See State v. Gatlin, 2014-298 (La.App. 5 Cir. 10/29/14), 164 So.3d 891, 896-97. See also State v. Scott, 2009-1658 (La.10/22/10), 48 So.3d 1080, 1085 (per curiam). That the prior conviction occurred several years before the instant offense had no bearing on its admissibility in this case. Remoteness in time, in most cases, is only hrione factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect. Generally, a lapse in time will go to the weight of the evidence, rath-, er than to its admissibility. State v. Jackson, 625 So.2d 146, 149 (La.1993); see Day, 119 So.3d at 816.
While the defendant was prejudiced by introduction of evidence of his prior conviction, such prejudice did not outweigh the probative value of the evidence. Where the very issue of intent to distribute drugs was challenged, the defendant’s prior conviction of distribution of cocaine (rather than just simple possession) aided in the proof of a material issue and had independent relevance in satisfying the intent element of the instant crime of possession with intent to distribute cocaine (rather than just simple possession). Further, in its jury charges following closing arguments, the trial court charged the jury on the limited nature of the other crimes evidence:
Evidence that the defendant was involved in the commission of offenses other than the offense for which he is on trial, is to be considered only for a limited purpose. Remember, the. accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense.
See Gatlin, 164 So.3d at 897-98.
Based on the foregoing, evidence of the defendant’s prior conviction for distribution of cocaine was admissible. Accordingly, this assignment of error is without merit.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.

. The defendant was also charged with distribution of Alprazolam (count 2), possession of Alprazolam (count 3), aggravated flight from an officer (count 4), and aggravated obstruction of a highway (count 5). The State proceeded to trial on count 1 only.